562 A.2d 953

**In re Authorizing & Directing the Revision of Lines & Grades on City Plan Nos. 295 & 297 of Port Royal Ave. from Ridge Ave. to Old Line Road, by Narrowing Certain Portions of Port Royal Ave.; by Relocating the Curb Lines, by Extending a Certain Drainage Right-of-Way and by Authorizing the Opening of Unopened Portions of Port Royal Ave., Where Required, From Henry Ave. to Old Line Road.**

**Appeal of ANDORRA ASSOCIATES et al.**

Commonwealth Court of Pennsylvania.

Argued Dec. 16, 1988.

Decided Aug. 1, 1989.

Reargument Denied Oct. 12, 1989.

8

Melvin Alan Bank, Bank, Minehart & D'Angelo, Philadelphia, for appellants.

Marjorie Stern Jacobs, Divisional Deputy City Sol., Lawrence W. Lindsay, Asst. City Sol., Philadelphia, for appellee.

Before DOYLE and COLINS, JJ., and BARBIERI, Senior Judge.

COLINS, Judge.

Andorra Associates and its assignees (appellants) appeal a May 9, 1988, order of the Court of Common Pleas of Philadelphia County which awarded the appellants $38,500.00[1] for the condemnation of .429 acres of the Andorra Shopping Center by the City of Philadelphia (appellee) for the widening of Port Royal Street near Henry Avenue. We vacate and remand.

The appellee filed its declaration of taking on January 16, 1979, and at that time tendered the appellants Thirty-eight Thousand Dollars ($38,000.00) as an estimate of just compensation. Appellants filed a Petition for Appointment of a Board of View (Board). The Board awarded the substantially greater amount of $263,300.00. The appellee's appeal to the Court of Common Pleas of Philadelphia County was assigned to Judge William Marutani for a determination of the highest and best possible use, with the stipulation that

1. Thirty-eight Thousand Dollars ($38,000.00) was the amount proffered by the City and Five Hundred Dollars ($500.00) was the attorney's fees awarded pursuant to Section 610 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, 26 P.S. § 1–610.

valuation would be determined at a later hearing. However, Judge Marutani entered an order holding that the appellants' method of valuation was improper and ordered it to obtain new appraisals. When Judge Marutani retired prior to entering a final order, the case was assigned to Judge Nelson Diaz. Judge Diaz ruled that he was bound by Judge Marutani's decision that the appellants' method of valuation was improper and awarded the appellant $38,-500.00 based on his understanding of the theory of highest and best possible use. This appeal followed.

The appellants argue that Judge Diaz erred in following Judge Marutani's decision that their method of valuation was improper and, further, that the award of $38,500.00 was inadequate based on the theory of highest and best possible use.

■ Our scope of review in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law. *Redevelopment Authority of Union County v. Property Located in West Milton on Route 254 at the Old Reading Railroad Station,* 101 Pa.Commonwealth Ct. 634, 517 A.2d 210 (1986). A party whose land is taken for a public use is entitled to just compensation.[2] Just compensation is the difference between the fair market value of the condemnee's entire property interest immediately before the comdemnation, and as unaffected thereby, and the fair market value of his property interest remaining immediately after such condemnation.[3] Fair market value of the land has traditionally been determined by considering the land's highest and best possible use.[4] To prove highest and best possible use, a condemnee must establish that the land in question is physically adaptable to such use and that there is a need for such use in the area which is reflected in the market for the property at the time of condemnation. *County of Luzerne v. Ceccoli,* 75 Pa.Commonwealth Ct. 486, 462 A.2d 354

2. *See* Section 601 of the Code, 26 P.S. § 1–601.
3. *See* Section 602(a) of the Code, 26 P.S. § 1–602(a).
4. *See* Section 603 of the Code, 26 P.S. § 1–603.

(1983). With this in mind, we are asked to determine if $38,500.00 was an adequate award for the taking of about one-half acre of the Andorra Shopping Center.

By way of background, Port Royal Avenue was legally opened to a width of thirty-three (33) feet in June of 1828. On March 7, 1927, Port Royal Avenue was confirmed on the City Plan as eighty (80) feet wide. The condemned area in the matter *sub judice* was within the confirmed street lines of Port Royal Avenue. The appellee, on August 8, 1978, revised the City Plan from eighty (80) feet to seventy-two (72) feet. This resulted in 8,348 square feet of the property, which was formerly on the City Plan as part of Port Royal Avenue, acquiring the zoning classification of "Area Shopping Center." On January 16, 1979, the appellee condemned the .429 acres in question for the actual widening of Port Royal Avenue from thirty-three (33) feet to seventy-two (72) feet. The land in question contained no buildings, but was used for driveways accessing the shopping center.

The appellants argue that the trial court was incorrect in its assumption that the area in question was to be used for actual parking space. The appellants maintain that the land was not to be used for actual parking but for the calculation of the shopping center's total leasable area which would allow for expansion in other parts of the shopping center. The appellants further maintain they have satisfied the two-prong test for highest and best possible use. Thus, they request this Court to award the figure of $136,000.00 reached by its appraiser.

The appellee argues that the land was not physically adaptable for shopping center use because it had no zoning, was located within the depicted bounds of the roadbed, according to the 1927 plan, and was of a steep grade so as to preclude its use for parking. In disagreeing with this contention, the appellants argue that the condemned portion of the property could have been used to calculate the maximum amount of permissible retail space pursuant to Section 14–309(3)(b)(.2) of the Philadelphia Zoning Code which states:

(3) Required Conditions.

. . . . .

(b) There shall be provided on the same lot, at the time of erection of any building or structure, off-street parking spaces for automobiles in accordance with the following requirements:

. . . . .

(.2) The total parking area, including access drives and aisles, shall be equal to not less than the sum of the aggregate floor area of all floors of the structure above the first floor plus twice the aggregate floor area of the first floor of the structure. For purposes of this computation, the aggregate floor area shall be measured between the interior sides of exterior walls, including stairways, halls, closets and similar areas. . . .

The first element of the highest and best possible use is that the land in question is physically adaptable to such use. While it is arguable that the area itself may not have been large enough to actually provide additional parking spaces, the record reflects that the grade of the land could have easily been altered to at least provide an additional access drive or aisle, such that it could have been used as part of the formula for calculating total land area available for future commercial development. Traditionally, zoning ordinances have been interpreted so that a landowner may have the benefit of the least restrictive use and enjoyment of his land. *Heller Appeal,* 101 Pa.Commonwealth Ct. 564, 516 A.2d 859 (1986). Furthermore, if the strip of land in question had no zoning, then in keeping with the philosophy of least restrictive use, the property could have been used for any purpose that was not detrimental to the public's health, safety, and welfare. Therefore, the record reflects that the condemned portion was adaptable for expansion of the shopping center even if it was not adaptable for the construction of an actual building to be situated thereon.

The second prong of the highest and best possible use test is that a need must exist for such use in the area which

is reflected in the market for the property at the time of condemnation. The parcel in question is located on a highly-traveled state highway in the northwestern part of the City of Philadelphia. It is an area of continuing residential and retail growth, as is reflected by the growth, as is reflected by the growth of the center since its opening in 1951 and the continued demand for retail space at the shopping center. It is clear that the appellants have satisfied the second prong of the highest and best possible use test.

█ Having determined that the condemned portion of the land satisfies the highest and best possible use standard, we now must determine if the $38,500.00 awarded by the trial court amounts to just compensation. It is clear that it does not. To support its argument that their land is valued at more than $38,500, appellants rely on the Pennsylvania Supreme Court's case of *South Twelfth Street,* 217 Pa. 362, 66 A. 568 (1907). In *South Twelfth Street,* a street was plotted on the City Plan of Allentown; however, it was not opened until forty years later. The City of Allentown alleged that no compensation was due to the owners of the buildings which were removed from the road because they were aware that a road was plotted for that land before the buildings were erected. Our Supreme Court held that the municipality could not deny compensation because the impairment of value came about as a result of the action of the municipality. Appellants' case is analogous because the City had originally plotted a road through the land in question before the shopping center was constructed and the City argues that the condemned portion was virtually worthless. The land is not worthless and, if it were worthless, it would only be so because of the appellee's actions. The appellee cannot condemn land and then attempt to avoid paying the owners just compensation because the condemnation renders it worthless. If the land was not zoned, then it could have been used for any purpose and, in the matter *sub judice,* the property could have been used for expanding the shopping center. The fact that the

property was shown on the appellee's Master Plan as part of Port Royal Avenue, does not render the land worthless. We must emphasize that any financial burden upon appellee has been created by appellee's choosing not to condemn the land in 1927, but waiting instead until 1979 to effectuate the condemnation.

We agree with the appellee that it is within the purview of the trial court acting as the finder of fact to determine damages, *Croop Estate v. Department of Transportation*, 38 Pa.Commonwealth Ct. 305, 393 A.2d 41 (1978). We also agree with the appellee that the trial court is entitled to disregard both parties' experts in reaching a valuation figure when the trial judge personally views the property. *Redevelopment Authority of the City of Philadelphia v. Nunez*, 109 Pa.Commonwealth Ct. 240, 530 A.2d 1041 (1987). However, the trial court erred because its decision was based on the mistaken assumption that the strip of land in question must be used for parking in order to have a higher value. As previously stated, the appellants sought to use the land in question as a basis for calculating total shopping center area for expansion of the allowable amount of retail space, not for actual parking.

The appellee argues that the appellant's reliance on *South Twelfth Street* is misplaced because it was decided fifty-seven years before the Code was enacted and does not entail the application of Section 604 of the Code. The appellee also argues that *South Twelfth Street* is inappropriate because unlike *South Twelfth Street*, no buildings existed on the appellants' land. This argument suggests that the appellants would have had to build on the land in order to recover damages. Apart from the topographical limitations, which easily could have been altered, the appellants could have used the property for any permissible use. The appellants only had to satisfy the two-prong test of highest and best possible use and this they have done.

Nevertheless, we cannot award the appellants the monetary relief they seek. It is the law in this Common-

wealth that when a trial court awards damages based on a faulty assumption, that a remand for a new trial is necessary. *See Re: Condemnation for Legislative Route 23047*, 79 Pa.Commonwealth Ct. 512, 470 A.2d 1080 (1984).

Accordingly, the order of the trial court is vacated and the matter is remanded for a determination of just compensation under Section 601 of the Code.

## ORDER

AND NOW, this 1st day of August, 1989, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is vacated and the matter is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.