GWYNEDD PROPERTIES,
INC., Appellant,

v.

LOWER GWYNEDD TOWNSHIP, Catherine M. Harper, Edward J. Brandt, Janet H. Kirch, Richard Landis, and Robert McQuade.

No. 91–2074.

United States Court of Appeals,
Third Circuit.

Argued June 16, 1992.

Decided July 15, 1992.

William H. Ewing (argued), William B. Petersen, Hangley, Connolly, Epstein, Chicco, Foxman, & Ewing, Philadelphia, Pa., for appellant.

James J. Garrity, Kenneth A. Roos (argued), Wisler, Pearlstine, Talone, Craig, Garrity & Potash, Blue Bell, Pa., for appellees.

Before: GREENBERG, NYGAARD and WEIS, Circuit Judges.

GREENBERG, Circuit Judge.

Appellant Gwynedd Properties, Inc. (GPI) appeals from a district court order of December 12, 1991, dismissing its complaint against appellees Lower Gwynedd Township and the five members of the Township's Board of Supervisors, its governing body, sued in both their individual and official capacities. GPI sought injunctive and monetary relief under 42 U.S.C. § 1983, on the ground that the appellees, acting under color of state law, conspired to deprive it of its constitutionally protected property rights. The district court on its own motion dismissed the complaint on *Younger* abstention grounds in recognition of ongoing state judicial proceedings. *See Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We conclude that federal adjudication of most of GPI's claims would not interfere with the state proceedings. Thus, we will partially reverse the order of December 12, 1991, though we will affirm the dismissal of two aspects of GPI's claim for relief.

## I.

## THE DISPUTE

### A.

#### Factual Background

For purposes of this appeal, we accept as true the allegations in the complaint. *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989). In 1975, GPI purchased approximately 142 acres of unimproved real estate located within the Township. A railroad line bisects the property into North and South parcels.[1] Apparently, the public has been freely using horse trails located on the South parcel. GPI held the property for ten years without attempting to develop it.

In 1986 and 1987, GPI submitted separate subdivision plans to the appellees to develop the parcels. GPI alleges that the appellees rejected its plans and in doing so, acting in concert with others, maliciously, arbitrarily, capriciously and for their own personal interests, obstructed GPI from making reasonable use of its property. With respect to the appellees' conduct regarding the North parcel, GPI alleges that they:

- refused to approve the initial plan on the ground that it called for a cul-de-sac of more than 1000 feet (which required GPI to build a bridge at great expense), even though other developers did not have such a requirement;

---

**1.** The appellees refer to the North parcel as the "Polo Club Estates," and the South parcel as "Penllyn Woods." We will simply refer to the North and South parcels.

- required GPI to construct recharge pits on every lot, although this was not required by the applicable ordinance and has not been imposed on other, similarly situated developers;
- prohibited GPI from placing detention basins in yard areas, although other developers have been permitted to place these basins in back and side yards;
- required GPI to grant an "equestrian easement," the location and dimensions of which were subject to approval by a private organization;
- contested before the Township Zoning Board GPI's request for a variance to build in a flood plain area, although the appellees have not opposed other developers' requests for variances to build in flood plain areas;
- delivered to GPI an amendment broadening the definition of "flood plain" which had never been properly adopted.[2]

Additionally, GPI claims that the appellees rejected its development plan for the South parcel to prevent it from making any reasonable use of its property, thereby enabling the public to continue to use the property for recreational purposes. GPI further contends that the appellees, by rejecting the plans, intended to minimize the value of the South parcel so that the Township can condemn it at a reduced cost. In addition to urging that the appellees were improperly motivated in rejecting its plans, GPI contends that the criteria they used to justify the rejection were flawed. Thus, GPI asserts that while the appellees purported to base their rejection of the South parcel development plan in part on the presence of "wetlands," the local ordinances did not enumerate this factor for consideration of development plans and the Township never considered it before. Indeed, according to GPI, at a meeting of the Board of Supervisors, one of the individual appellees said to another property owner that the "wetlands" criterion applied only to GPI's property. GPI further contends that while the appellees also claimed to

reject the development plan because it did not include the names and widths of existing streets, sanitary sewers, storm drains and water lines within 400 feet of the subject site, they often approved plans omitting these details.

## B.
### State Court Proceedings and Related Developments

There have been several state court proceedings regarding the property. On December 30, 1987, the Township initiated condemnation proceedings to acquire the South parcel for a park. But GPI filed preliminary objections to the condemnation in the Court of Common Pleas of Montgomery County, and ultimately the Pennsylvania Supreme Court ruled that the Township condemned the property improperly. *Lower Gwynedd Township v. Gwynedd Properties, Inc.*, 527 Pa. 324, 591 A.2d 285 (1991). Consequently, in July 1991, title to the South parcel which had been taken by the Township in the condemnation proceedings was revested in GPI.

In addition, GPI filed two germane mandamus petitions in the common pleas court. In the first, filed on August 18, 1987, against the Township and the Board of Supervisors, but only in their official capacities, GPI alleges that the Township failed to render a decision on its subdivision plan for the South parcel within the time required by state law. Accordingly, GPI seeks an order compelling approval of the plan. In the second, filed July 15, 1991, against the Township's Code Enforcement Officer and the Board of Supervisors, GPI asserts that the officials refused to enforce its local sign ordinance evenhandedly against individuals who advocate the taking of the South parcel by displaying signs in violation of that ordinance. Both mandamus petitions are pending.

GPI also filed a zoning appeal in the court of common pleas from the Township's 1987 rejection of the South parcel subdivision plan. Although the appeal was dismissed when GPI lost title to the proper-

---

2. We have paraphrased these contentions.

ty in the condemnation, on May 24, 1991, shortly after the Pennsylvania Supreme Court issued its decision invalidating the condemnation, GPI filed a petition in the common pleas court to reinstate the zoning appeal. This petition is also pending.[3]

There was yet another state court action, this one instituted by the Township. According to the appellees, when the Township rejected amended subdivision plans which GPI attempted to file, GPI began cutting down trees in a large area of the South parcel. In response, on October 17, 1991, the Township filed an action against GPI in the Court of Common Pleas of Montgomery County, seeking a temporary restraining order against further tree-cutting. That day the common pleas court issued the temporary restraining order which ordered GPI: (1) to refrain from further cutting down trees on its property; (2) to permit up to ten people from the Township and various other local and federal agencies to enter the land; and (3) to refrain from operating any heavy equipment on the land. On October 21, 1991, that court issued a preliminary injunction with the same terms contained in the temporary restraining order.

On November 4, 1991, GPI filed an answer, new matter and counterclaim in the Township's common pleas court action. In the new matter, GPI essentially asserted that the Township lacks authority to prevent it from cutting down trees on its own property and, in the counterclaim, GPI asserted that the Township ordinance which purports to restrict tree-cutting, "constitutes a deprivation of [GPI's] property without due process of law." Additionally, GPI alleged that the Township "has taken affirmative steps to prevent [GPI] from the lawful use of its property in these proceedings." In its counterclaim GPI requested damages in excess of $20,000.

GPI moved in the common pleas court for an order dissolving the preliminary injunction, but on November 13, 1991, the court denied that motion. GPI appealed

from that order and we understand that the appeal is still pending.

The last state proceeding was instituted on May 28, 1992, after the district court dismissed this action, when the Township again commenced condemnation proceedings by filing a declaration of taking to acquire the South parcel for use "as a park, playground, play field, public park or recreation center." At oral argument before us GPI indicated that it intends to contest the validity of this condemnation.

### C.

### Federal Proceedings

On October 21, 1991, four days after the common pleas court issued the temporary restraining order in the tree-cutting case, GPI filed the action now before us in the United States District Court for the Eastern District of Pennsylvania. As we have already indicated, in its federal complaint GPI alleges that the appellees have acted in concert to prevent it from making full legal use of its property, and to reduce the value of the property and therefore the price the Township will have to pay when the property is condemned. GPI alleges that it is entitled to relief under 42 U.S.C. § 1983 on the ground that the appellees denied GPI its rights to due process of law and to be free from unreasonable searches, in violation of the Fourteenth Amendment to the United States Constitution and that such actions were taken under color of state law. Additionally, GPI advances tort claims under Pennsylvania common law.

GPI asks for both injunctive and monetary relief. In particular it asks the court to enjoin the appellees: (1) from interfering with its property and from arbitrarily denying approvals and permits to which it is legally entitled; and (2) from entering onto its property in violation of its constitutional rights. Furthermore, GPI seeks compensatory damages in excess of $100,000 and attorneys fees pursuant to 42 U.S.C. § 1988.

---

**3.** There is also a separate zoning matter pending before the Township Zoning Hearing Board involving GPI's application to construct four houses in the North parcel partially in a flood plain.

On November 5, 1991, on its own motion, the district court ordered GPI to show cause why the action should not be dismissed pursuant to the abstention doctrine articulated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, in light of the ongoing state proceedings. After GPI filed its response, the appellees filed a motion to dismiss or, alternatively, to stay the action, accompanied by a brief and various state-court documents. The district court stayed discovery and, on December 12, 1991, dismissed the complaint on *Younger* abstention principles, and dismissed the appellees' motion as moot.[4] GPI has appealed.

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a). We have appellate jurisdiction under 28 U.S.C. § 1291 to review the district court's final order dismissing this action.

## II.

## ANALYSIS

### A.

### Standard of Review

We exercise plenary review over the legal determination of whether the requirements for abstention have been met. *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 270 (3d Cir. 1991). Once we determine that the requirements have been met, we review a district court's decision to abstain under *Younger* abstention principles for abuse of discretion. *Ayers v. Philadelphia Housing Auth.*, 908 F.2d 1184, 1188 (3d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991); *see also Hospital Council of Western Pa. v. Pittsburgh*, 949 F.2d 83, 90 n. 4 (3d Cir.1991); *Schall v. Joyce*, 885 F.2d at 106.

### B.

### Abstention in General

The Supreme Court has recently reiterated that, because Congress, and not the judiciary, determines the scope of federal jurisdiction within constitutionally permissible bounds, a federal court has no authority to abstain from the exercise of jurisdiction that has been properly conferred. *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 357–60, 109 S.Ct. 2506, 2512–13, 105 L.Ed.2d 298 (1989). This obligation to adjudicate claims within the federal courts' jurisdiction is "virtually unflagging." *Id.* at 359, 109 S.Ct. at 2513 (citing *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988)). However, because federal courts do have discretion in determining whether to grant certain types of *relief*, abstention is appropriate in a few carefully defined situations. *See id.* But abstention remains "the exception, not the rule. 'The doctrine of abstention ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it....'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). Therefore, "[a]bstention rarely should be invoked." *Ankenbrandt v. Richards*, —— U.S. ——, ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992).

*Younger* abstention arose primarily from "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their

---

**4.** The appellees sought a dismissal on the basis of abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Inasmuch as the district court did not determine that these cases were applicable and entry of an order of abstention, even if the criteria for abstention are present, is within the district court's discretion, we decline to address these cases beyond indicating that it is difficult to understand how they could be applicable here.

separate ways." *Younger*, 401 U.S. at 44, 91 S.Ct. at 750. Thus, *Younger* abstention reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). Yet abstention under *Younger* is appropriate only where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims. *Id.* at 432, 102 S.Ct. at 2521; *Schall*, 885 F.2d at 106. While *Younger* involved ongoing *criminal* proceedings, the Supreme Court has extended its abstention principles to "certain civil proceedings ..., if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987). But even in the presence of the necessary predicates for *Younger* abstention, abstention is not appropriate if the state proceedings are being undertaken in bad faith, or if there are other extraordinary circumstances, such as where the state proceedings are based on a flagrantly unconstitutional statute. *Middlesex*, 457 U.S. at 435, 102 S.Ct. at 2523; *Schall*, 885 F.2d at 106.

Notwithstanding the foregoing exacting standards, GPI concedes, and we agree, that the district court appropriately could have abstained from hearing its request for a preliminary injunction and its claims against the Township relating to the Township's state court tree-cutting injunction proceeding. However, GPI asserts that these claims make up only a small part of its requested relief and we agree with this as well. Since GPI's claims for injunctive relief comprise only one aspect of its complaint, we must determine whether the district court correctly dismissed the complaint in its entirety.

### 1.

### Ongoing State Proceedings

As we have already indicated, there have been several state judicial proceedings relating to this matter. The mandamus petitions initiated by GPI, the action filed by the Township against GPI in the Court of Common Pleas of Montgomery County, seeking injunctive relief, and GPI's counterclaim in that case were all pending when the district court dismissed this action. Furthermore, at that time GPI was attempting to have its zoning appeal regarding the South parcel reinstated in the common pleas court. Accordingly, even without regard for the recently filed condemnation action, the first *Younger* prong has been satisfied.

### 2.

### Important State Interests

■ The district court concluded that the state proceedings implicate important state interests since "[t]his dispute is largely about land use issues, 'an area of particularly local concern.'" (quoting *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 633 (3d Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992)). Similarly, the appellees argue that the state proceedings implicate important state interests, as the proceedings challenge the applicability and legality of local land use ordinances. GPI responds that its *federal* action is not a land use case. It urges that, unlike the state actions related to this case, which indeed involve the applicability and constitutionality of local land use ordinances, its federal action challenges the appellees' conduct without implicating the ordinances themselves. Similarly, it points out that the appellees in this action are parties to the state proceedings only in their official capacities.

While the second prong of the *Younger/Middlesex* test focuses on the state interests implicated by *state* as opposed to federal actions, abstention under *Younger* presumes that the federal action would interfere with the ongoing state proceedings since, typically, the federal plaintiff's ob-

ject in filing the federal action is either to seek an injunction against the state proceedings themselves or to challenge the law being applied in those proceedings. Thus, where abstention is appropriate, there is often a nexus between the claims asserted in the federal action and the defenses or claims asserted or available in the state action. *See, e.g., Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (abstention appropriate where federal plaintiff sought to enjoin pending administrative employment discrimination proceeding initiated by federal defendant); *Middlesex,* 457 U.S. 423, 102 S.Ct. 2515 (abstention appropriate where federal plaintiff, instead of filing answer to ethics charges based on alleged violation of disciplinary rules, challenged the rules in a federal action); *Younger, supra* (abstention appropriate where federal plaintiff sought to enjoin state criminal prosecution); *cf. Pennzoil,* 481 U.S. 1, 107 S.Ct. 1519 (abstention appropriate where federal plaintiff sought to enjoin state judgment winner from enforcing judgment).

By contrast, where federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying *Younger* abstention are not implicated. Thus, *Younger* abstention may not be appropriate where, for example, the federal plaintiff seeks only prospective relief without seeking to annul either previous state court judgments or the effect of the judgments. *See, e.g., Wooley v. Maynard,* 430 U.S. 705, 711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977) (where "suit is in no way 'designed to annul the results of a state trial' since the relief sought is wholly prospective," *Younger* is inapplicable); *see also Davis v. Crush,* 862 F.2d 84, 91 (6th Cir.1988); *Loftus v. Lawrence Park,* 764 F.Supp. 354, 358–59 (W.D.Pa.1991).

It is true that there is some overlap, factually and to a lesser extent legally, between this action and the proceedings pending in the common pleas court. The state and federal proceedings involve the South parcel, although the federal action relates to the North parcel as well. Paragraphs 18 and 19 of the federal complaint describe the Township's alleged failure to enforce its sign ordinance, which is the subject of the second mandamus proceeding filed by GPI. Paragraph 17(p) of the federal complaint avers that the appellees are "arbitrarily, capriciously and without legal authority ... limit[ing] plaintiff's use of its property ...[,]" and in paragraph 17(j) GPI alleges that the appellees arbitrarily and capriciously rejected the South parcel subdivision plan. To a degree this parallels GPI's South parcel zoning appeal, which it seeks to have reinstated, for in that action GPI alleges that the "Township was arbitrary, capricious and acted in violation of statutory law, case law and Township ordinances in rejecting the preliminary [South parcel] subdivision plan...." Additionally, the federal complaint alleges that the appellees "have denied [GPI] its rights to due process of law ... in violation of the Fourteenth Amendment to the Constitution of the United States[,]" and in GPI's counterclaim in the tree-cutting case it alleges that the ordinance upon which the Township's preliminary injunction is based also violates GPI's due process rights under the United States Constitution.

However, with the exception of some aspects of GPI's federal claims for injunctive relief, as to which GPI concedes abstention is appropriate, the federal claims demonstrate no disrespect for the state's jurisdiction to adjudicate any of the claims pending in the common pleas court. Significantly, GPI does not seek to enjoin any state proceedings, nor does it challenge the legality of any township or municipal ordinance. The federal action relates to the appellees' conduct regarding the entire property, while the state proceedings relate to the South parcel.[5] Moreover, as GPI has indicated, the individual defendants are not parties in their individual capacity in any of the state proceedings. Although the appellees note that GPI seeks monetary relief in

---

5. While there is one pending zoning matter relating to the North parcel, nothing in this action could possibly interfere with that proceeding.

its counterclaim in the common pleas court for the Township's conduct, that relief solely relates to the tree-cutting dispute. The remaining state judicial proceedings relate to the condemnation of the South parcel, the Township's enforcement of its sign ordinance, the timeliness of the Board's action on the subdivision plan, and the South parcel zoning appeal.[6]

In contrast, the federal complaint is based on the appellees' allegedly unlawful course of *conduct,* and does not challenge the legality of any ordinance. Though we do not minimize the difficulties that GPI may have in prevailing substantively on its federal claims, the district court action in itself can hardly be said to interfere with the state proceedings, except as to certain aspects of GPI's requested relief as discussed below.[7]

Clearly, therefore, GPI's federal cause of action does not raise the concern for state-federal comity addressed by *Younger* abstention. While it is true that there are ongoing state proceedings regarding the same general subject matter as the federal action, "[t]he rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same subject matter in the Federal court having jurisdiction...." *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 505, 54 L.Ed. 762 (1910). *Accord, Colorado River,* 424 U.S. at 817, 96 S.Ct. at 1246; *Schall,* 885 F.2d at 112 ("[t]he presence of two parallel law suits ... does not run afoul of *Younger* ").

Moreover, this federal action is not a case in which important state interests are at stake, such as a state's interest in its judicial system or its interest in land use policy. *See Midnight Sessions, Ltd. v.*

*Philadelphia,* 945 F.2d 667, 682–83 (3d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). Unlike the state proceedings in which the legality of land use ordinances are at issue, here GPI alleges that the defendants have *applied* these ordinances maliciously in order to deprive GPI of its federal constitutional and statutory rights. In this regard our opinion in *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743 (3d Cir.1982), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), is instructive, if not controlling. In *Heritage Farms,* the federal plaintiffs were in the business of purchasing and developing residential land in Bucks County, Pennsylvania. The plaintiffs alleged that the defendants—Solebury Township, its Board of Supervisors, past and present members of the Board, and the Township Solicitor—conspired under color of state law to destroy the plaintiffs' business by preventing them from carrying out plans for various residential developments. *Id.* at 745. The district court dismissed the complaint invoking *Pullman* abstention, which applies where there is an unsettled question of state law upon which federal constitutional issues depend. *See Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Biegenwald v. Fauver,* 882 F.2d 748, 750 (3d Cir.1989). In addition it invoked *Burford* abstention which applies where an erroneous decision of state law by the federal court would be disruptive of important state policies or administrative concerns. *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[8]

We held that the federal complaint neither involved nor implicated important state policies. Our observations in *Heri-*

---

6. We believe that if the Township ultimately is successful in its condemnation of the South parcel, the remaining state proceedings will be rendered moot, except, perhaps, for the second mandamus action.

7. We are not concerned here with whether state adjudications may be preclusive in the federal case. Furthermore, we are not to be understood as making any direction regarding the order in which the state and federal proceedings should be tried.

8. Inasmuch as there were no pending state proceedings in *Heritage Farms, Younger* abstention was necessarily inapplicable there. Nevertheless, our discussion of the state interests for purposes of *Pullman* abstention is applicable here insofar as it bears on *Younger's* requirement that the state proceedings implicate important state interests.

*tage Farms* very well could have been written about this case:

> The policies embodied in the Municipalities Planning Code are not being attacked—it is rather the application of those policies by a single township that is at issue. In fact, if it is found that the defendants acted unlawfully, the state and local policies will be vindicated.
>
> Perhaps most importantly, this case is not simply a land use case. Rather the plaintiffs have alleged that members of the Board have used their governmental offices to further an illegal conspiracy to destroy plaintiffs' constitutional rights to conduct a legitimate business.

671 F.2d at 748.

Further, we admonished district courts not to dismiss claims hastily merely because they may involve land use issues:

> It is incumbent upon district courts, faced with a claim arising out of land use questions, to examine the facts carefully to determine what the essence of the claim is. If it is an unlawful conspiracy like the one alleged here, the mere presence of land use issues should not trigger a mechanical decision to abstain.

*Id.*[9]

We believe that the district court in this case did not adequately examine the facts and claims alleged in the federal and state actions. Rather, in dismissing GPI's complaint, the district court applied the three-part *Younger/Middlesex* test without actually considering whether the federal action would interfere with the ongoing state proceedings. Thus, the second prong of the *Younger* test has not been met as the federal action does not interfere with state proceedings implicating important state interests.

### 3.

### Opportunity to Raise Federal Claims in State Court

The district court also concluded that GPI "is fully able to present its constitutional claims in the state court proceeding...."[10] Additionally, while the district court recognized that some of GPI's claims for monetary relief had not been asserted in state court, it declined to stay the proceedings rather than dismiss since GPI:

> has shown no reason why its claims for monetary relief cannot be decided in the state court proceeding. In any event, nothing has been brought to this court's attention that would suggest that the Court of Common Pleas of Montgomery County would not entertain these claims against these defendants as it has all of the many others plaintiff has pressed upon it. (footnote omitted).[11]

---

**9.** *See also Izzo v. Borough of River Edge*, 843 F.2d 765 (3d Cir.1988). Like *Heritage Farms*, *Izzo* also dealt with *Burford* abstention. In that case, the plaintiff, an amateur radio operator, in response to a local zoning board's refusal to allow him to extend the height of his transmission tower, filed a federal complaint challenging the board's action on various constitutional grounds. He sought injunctive and declaratory relief, as well as damages. The district court abstained on *Burford* grounds, and we reversed. We held that the district court erred in abstaining where there was a potential conflict between a narrow federal policy and the local zoning regulations and, significantly, where the federal action would not be disruptive of state land use policy: "[T]he federal court's decision [would not] have a potentially far-reaching effect in the area of land use regulation. In contrast, the federal intrusion is very limited and unlikely to nullify any substantial portion of the regulatory program." *Id.* at 769. Because GPI's action challenges the appellees' allegedly unconstitutional conduct, the same is true in this case.

**10.** The court also stated that GPI "has in fact, already raised its constitutional claims in that forum." As we have pointed out, however, the claims advanced in the state proceedings differ in fundamental respects from those advanced in the district court.

**11.** In a footnote, the district court questioned whether GPI had a basis for any claim for monetary relief "since the bulk of [appellees'] allegedly unlawful actions have been judicially vindicated in the various related state proceedings." We are unable to ascertain the basis for this conclusion as the only proceeding fully litigated, the challenge to the original condemnation, was decided in GPI's favor and all of the other claims remain pending. More fundamentally, however, even if the appellees are successful in the state claims, this will not necessarily vindicate the appellees' unlawful *conduct* as alleged in the federal complaint.

The parties disagree as to which party bears the burden of demonstrating whether the state court proceedings afford an adequate opportunity to raise the federal claims. There is, however, no need to determine whether GPI could have raised its claims in state court nor to discuss which party bears the burden of proof on this issue. Inasmuch as GPI's federal action does not interfere with the ongoing state proceedings,[12] and does not implicate any important state interests, it poses no threat to federal-state comity. Thus, abstention is inappropriate regardless of whether GPI could have raised its federal claims in state court.

## C.

### Abstention in this Case

As we have indicated, in its brief GPI "concedes that the district court could appropriately have decided to abstain from hearing plaintiff's Motion for a Preliminary Injunction with respect to the Township's state court injunction proceeding." In addition to seeking monetary relief, GPI's federal complaint asks the court to "[e]njoin[ ] the [appellees] from interfering with [GPI's] lawful use of its property and from arbitrarily denying approvals and permits to which [GPI] is legally entitled ... [and] from entering onto [GPI's] property in violation of [GPI's] constitutional rights[.]"

To the extent an injunction enjoining the appellees "from interfering with plaintiff's lawful use of its property," and "from entering onto plaintiff's property in violation of plaintiff's constitutional rights" would have the effect of nullifying the pending state tree-cutting injunction pro-

ceedings, *Younger* abstention is appropriate. Additionally, abstention is appropriate to the extent an injunction enjoining the appellees from denying approvals and permits would result in a *de facto* review of the township's zoning decisions currently under review in the state courts. *See Belle Terre v. Boraas*, 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1974) ("Our role is not and should not be to sit as a zoning board of appeals.") (Marshall, J., dissenting on other grounds); *Midnight Sessions, Ltd. v. Philadelphia*, 945 F.2d at 682–83; *Izzo v. River Edge*, 843 F.2d 765, 769 (3d Cir.1988) ("Federal courts have expressly disavowed any desire to sit as a statewide board of zoning appeals hearing challenges to actions of municipalities."). Furthermore, even to the extent that GPI seeks damages, the district court proceedings should not be used to review actions of the appellees predicated upon proper factors for zoning and planning decisions.

If GPI's claims for money damages were all that survived *Younger* abstention, arguably the district court would have acted within its discretion in dismissing the entire complaint, assuming GPI could have raised these claims in the state court.[13] *See Williams v. Hepting*, 844 F.2d 138, 144–45 (3d Cir.) (noting rule in this circuit that a " 'district court, when abstaining from adjudicating a claim for injunctive relief, should stay and not dismiss accompanying claims for damages and attorney fees when such relief is not available from the ongoing state proceedings' ") (quoting *Monaghan v. Deakins*, 798 F.2d 632, 635 (3d Cir.1986), *aff'd in relevant part*, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988))[14],

---

**12.** We discuss the limited exceptions below.

**13.** Although we have concluded above that important state interests are not at stake in these federal proceedings, this would not be the case to the extent GPI may seek to circumvent its available state claims or defenses via federal court. Thus, our conclusion that *Younger* abstention is appropriate to a limited extent is not inconsistent with our conclusions discussed above. The potential for confusion stems from the fact that, while GPI has raised federal *claims* that do not interfere with state proceedings, certain aspects of its requested *relief* potentially

may interfere with the state proceedings if such relief is fashioned too broadly.

We also note that to the limited extent we find abstention appropriate, the third *Younger* prong, the opportunity for relief in the state court, clearly is met, as we only find abstention appropriate to the extent there is an actual conflict between the federal and state proceedings.

**14.** In *Deakins,* the Supreme Court held that "the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." 484 U.S. at 202, 108 S.Ct. at 529 (footnote omitted).

*cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988). Here, however, none of the germane state judicial proceedings relate to the North parcel and thus there is no basis to abstain under *Younger* from considering GPI's claims for monetary and injunctive relief for the appellees' conduct relating to that property. Accordingly, this is not a case where claims for monetary relief are all that remain after appropriate abstention.[15]

We point out, of course, that the new condemnation proceedings changed the situation with respect to the South parcel after the district court dismissed this case.[16] Though it may be that prior to the condemnation, injunctive relief could have been given in the district court with respect to that parcel, that possibility seems now to be foreclosed for, under Pennsylvania law, title passes to the condemnor at the time of the filing of the declaration of taking. Pa. Stat.Ann. tit. 26, § 1–402(a) (Purdon Supp. 1992). While the ordinance upon which the recent condemnation was based provides for a savings clause preserving causes of action preexisting the taking,[17] we nevertheless do not perceive at this time how a court could order injunctive relief with respect to the South parcel if GPI no longer owns it. Thus, this aspect of GPI's claim may be moot.

It appears, however, that GPI still might be able to pursue, at least in part, its claim for money damages for the appellees' conduct relating to the South parcel. Under Pennsylvania law, the compensation required in condemnation actions generally is limited to the fair market value of the property at the time of the condemnation. *See* Pa.Stat.Ann. tit. 26, § 1–602(a) (Purdon Supp.1991). This valuation is predicated on the "highest and best reasonably available use of the property" even if it was not used for that purpose at the time of the condemnation. *Id.* § 1–603. However, there is some limitation on these principles in that changes "in the fair market value prior to condemnation due to the imminence of condemnation shall be disregarded in awarding damages, so that damages would include economic deterioration caused by precondemnation activities of the condemnor." *Cass Plumbing & Heating Co. v. PPG Industries, Inc.,* 52 Pa.Commw. 600, 416 A.2d 1142, 1147–48 (1980); *See* Pa.Stat. Ann. tit. 26, § 1–604 (Purdon Supp.1992). In establishing the highest and best use, the property owner must establish that the land is physically adaptable for such use and that there is a need for the use in the area which is reflected in the market for the property at the time of condemnation. *Appeal of Andorra Assoc.,* 128 Pa. Commw. 6, 9, 562 A.2d 953, 954 (1989). Moreover, "the municipality [cannot] deny compensation because the impairment of value came about as a result of the action of the municipality." *Id.* at 12, 562 A.2d at 956.

While the district court has not yet had an opportunity to evaluate the propriety of GPI's claim for money damages with respect to the South parcel in light of the latest condemnation action, GPI should not be permitted to recover damages in its federal action which potentially may be compensable in the condemnation proceedings. However, at oral argument counsel for GPI pointed out that some of its damages clearly could not be recovered in such proceedings, such as expenses it had allegedly incurred as a result of the appellees' ac-

---

**15.** Additionally, we note that in this case the claims for monetary relief are significant; it is clear that the primary thrust of the claims asserted is not simply to enjoin ongoing state action. Indeed, at oral argument counsel for GPI suggested that, in hindsight, it may have been a "tactical" error for it even to seek preliminary injunctive relief. Of course, we express no view as to whether this was so.

**16.** We therefore supplement the record to consider the new condemnation proceedings.

**17.** Section 3 of Ordinance No. 294 provides:

Nothing in this Ordinance shall be construed to affect any suit or proceeding pending in any court, or any rights acquired or liability incurred, or any permit issued, or any cause or causes of action existing prior to the adoption of this Ordinance.

Township of Lower Gwynedd, Pa., Ordinance Authorizing the Solicitor of the Township of Lower Gwynedd to Undertake Eminent Domain Proceedings for [the South] Parcel (May 18, 1992).

tions. Additionally, we note that GPI seeks punitive damages unrelated to the value of the property, which we therefore believe are not compensable in the condemnation proceedings. Thus, we cannot say that GPI will be able to obtain its full measure of damages in the state condemnation proceeding. Accordingly, on remand, GPI may be permitted to pursue partially its claim for damages with respect to the South parcel, as the federal proceedings have a role which supplements rather than interferes with the state proceeding. *See Deakins v. Monaghan,* 484 U.S. at 202, 108 S.Ct. at 529.

### D.

### Procedural Contentions

We deal with one final issue. GPI makes the procedural claim that the district court erred by considering matters outside the pleadings in its determination to abstain, *i.e.,* court documents pertaining to the state court proceedings. Even assuming GPI is correct,[18] the remedy in this instance merely would be to remand to give GPI an opportunity to present additional documents relevant to the pending motion. Because we have determined that the district court erred in abstaining based on the present record, this issue is moot.

### III.

### CONCLUSION

In view of the aforesaid, we will reverse the district court's order of December 12, 1991, dismissing this case, but we will affirm dismissal of the complaint to the extent GPI seeks injunctive relief pertaining to the South parcel. We will remand the

---

**18.** Dismissal on abstention grounds without retention of jurisdiction is in the nature of a dismissal under Fed.R.Civ.P. 12(b)(6). *Heritage Farms,* 671 F.2d at 745. Rule 12(b)(6) provides that if matters outside the pleadings are presented and not excluded by the court, the motion should be treated as one for summary judgment under Rule 56, "and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion...." Fed. R.Civ.P. 12(b)(6). Here, the district court did not afford GPI a reasonable opportunity to re-

matter to the district court for further proceedings consistent with this opinion.

---

spond to the documents submitted by the Township defendants. *See Rose v. Bartle,* 871 F.2d 331, 340-42 (3d Cir.1989). In fact, as indicated above, the court issued its opinion and order before receiving GPI's memorandum in opposition to the Township defendants' motion to dismiss/stay. Although a district court may take judicial notice of court documents, it should give both parties an opportunity to respond, at least to ensure that its view of the state proceedings is a complete one. *See* Fed.R.Evid. 201(e).