Thomas A. WARMUS, Appellant,

v.

Lewis MELAHN; James Oetting; William Hobbs, Appellees.

No. 93–4083.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1994.

Decided Aug. 8, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 21, 1995.

Alan C. Gold, South Miami, FL, argued (Robert L. Hawkins, III, Jefferson City, MO, Mayer Morganroth, Southfield, MI, on the brief), for appellant.

Bruce Farmer, Asst. Atty. Gen., Jefferson City, MO, argued, for appellee.

Before HANSEN, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Thomas A. Warmus appeals from a judgment of the district court dismissing with prejudice his 42 U.S.C. § 1983 damages action against Lewis Melahn, the former director of the Missouri Department of Insurance (MDI), and two of his subordinates, James Oetting and William Hobbs. In dismissing the court acted under the *Younger* abstention doctrine, which is premised on the "longstanding public policy against federal court interference with state court proceedings." *Younger v. Harris*, 401 U.S. 37, 43, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). We affirm.

## BACKGROUND

Warmus is the owner of American Way Holding, Inc., a holding company comprised of seven insurance companies, including American Way Life Insurance Company (Life), and three non-insurance companies. Prior to 1989, Warmus had been feuding with the Michigan Insurance Bureau over some of the credit-life business generated by Life. Consequently, in May 1989 Warmus directed American Way Holding to purchase American Financial Security Life Insurance Company (AFSLIC), a Missouri-domiciled premium credit-life and disability insurance company. To avoid further conflict with the Michigan bureau, Warmus ordered that Life's entire block of credit-life business be transferred from Life to AFSLIC, which is regulated by MDI. By early 1992, this transfer of business was complete.

In March 1992, due to the company's excessive premiums-to-surplus ratio, Melahn, as director of MDI, ordered AFSLIC into administrative supervision. *See* Mo.Rev. Stat. § 375.1160.2(1)(a–e) (1991). Soon thereafter, AFSLIC attempted to right itself financially by entering into a series of reinsurance treaties. In June 1992, it entered into one such treaty with Lloyds of London (the "Lloyds treaty"). The Lloyds treaty was to be in force during the last three quarters of 1992, and, according to projections, was to increase AFSLIC's reserves by some $8,000,000. This increase in reserves, it was hoped, would improve the company's premiums-to-surplus ratio to an acceptable regulatory level.

However, before the Lloyds treaty could be finalized, Hobbs, the Melahn-appointed administrative supervisor of AFSLIC, had to approve it. Although Hobbs had some questions about the methodology AFSLIC used to account for the treaty's reserve impact, he eventually approved it in early August 1992. Later, Hobbs's superiors at MDI, Oetting and Melahn, also approved the Lloyds treaty.

In October 1992, a dispute with MDI arose over a different reinsurance treaty—one AFSLIC had executed with American Trend Life Insurance Company (the "Trend treaty"). MDI contended the Trend treaty was

invalid because American Trend was not an authorized Missouri reinsurer. AFSLIC bowed to this contention and restated its September 30, 1992 financial statement to reflect the elimination of all Trend reserve credits.

The elimination of Trend reserve credits, however, caused a reserve-credit void for the first three quarters of 1992. To remedy this problem, AFSLIC chose to reapply the Lloyds treaty, which, by its terms, was in force during the last three quarters of 1992 to the first three quarters of 1992. In other words, AFSLIC substituted the Lloyds treaty for the Trend treaty. This substitution of reinsurance treaties filled AFSLIC's reserve-credit void for the first three quarters of 1992, and allowed it to .report a positive surplus-capital balance for the three quarters ending September 30, 1992.

In December 1992, MDI conducted an examination of AFSLIC. In its examination report, in a seeming reversal from the prior positions of Hobbs, Oetting and Melahn, MDI revealed that it now disapproved of the methodology AFSLIC was using to account for the reserve impact of the Lloyds treaty. Using what it perceived to be the proper accounting methodology, MDI calculated the Lloyds treaty—at the time being used as a substitute for the Trend treaty—to have spawned only a fraction of the reserve credits taken by AFSLIC in its September 30, 1992 financial statement. By MDI's accounting, AFSLIC was actually insolvent as of September 30, 1992.

In light of the company's apparent insolvency, on February 1, 1993 MDI filed a petition for rehabilitation against AFSLIC in the Circuit Court of Cole County. *See* Mo. Rev.Stat. § 375.1165 (1991). The circuit judge referred the matter to a special master. The master found that MDI should be estopped from alleging AFSLIC insolvent on the basis of faulty accounting procedures. However, the master nonetheless concluded that AFSLIC was insolvent as of September 30, 1992 because the company had illegally substituted the Lloyds treaty for the Trend treaty. Although the circuit court apparently disagreed with the master's conclusion that MDI should be estopped from challenging AFSLIC's accounting methods, it agreed that AFSLIC was insolvent and ordered it into rehabilitation. In April 1993, AFSLIC appealed the rehabilitation order to the Missouri Court of Appeals.

In May 1993, at the behest of Warmus, AFSLIC filed a "Motion for Authority to File Suit on Behalf of Defendants" in the Circuit Court of Cole County. In that motion, AFSLIC sought authority to file a section 1983 damages action against appellees. The motion was denied, and AFSLIC did not appeal the denial.

While AFSLIC's appeal of the rehabilitation order was pending, in June 1993, as "beneficial owner, president and director" of AFSLIC, Warmus filed this section 1983 action in the district court against appellees in each's personal capacity. Seeking money damages only, Warmus challenged appellees' conduct during AFSLIC's administrative supervision. Among other things, Warmus alleged that while AFSLIC was in administrative supervision, appellees, acting in violation of his federal constitutional rights, conspired with the Michigan Insurance Bureau to drive AFSLIC out of business.

Appellees subsequently moved to dismiss on the basis of *Younger* abstention. Applying the three factors set forth in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), the district court agreed that *Younger* abstention was warranted and dismissed Warmus's civil rights action with prejudice. The court found that 1) AFSLIC's appeal was an ongoing state proceeding, *see New Orleans Public Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 369, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989) ("for *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system"); 2) the appeal implicated the important state interest of regulating insurance companies; and 3) Warmus had an adequate opportunity to raise his constitutional claims in the appeal. Warmus now appeals the district court's *Younger* dismissal.

## DISCUSSION

### I.

■ We begin with basic *Younger* principles. The *Younger* abstention doctrine is grounded both in federalism and comity, which dictates that " '[t]he National government, anxious though it may be to vindicate and protect federal rights and interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.' " *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir.1990) (quoting *Younger*, 401 U.S. at 44, 91 S.Ct. at 750). Thus, when a federal action is projected to unduly interfere with ongoing state proceedings "so important that exercise of federal judicial power would disregard the comity between the states and federal government," federal courts have the discretion to abstain. *Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987); *see Yamaha Motor Corp. v. Riney*, 21 F.3d 793, 798 (8th Cir.1994) (district court's decision to abstain under *Younger* reviewed for an abuse of discretion).

■ From these basic principles, it becomes clear that some measure of potential undue federal interference is a *Younger* prerequisite. *See Davis v. Lansing*, 851 F.2d 72, 77 (2d Cir.1988) ("*Younger* itself speaks of interference with state proceedings"). "In the typical *Younger* case, [where] the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings," *Crawley v. Hamilton County Comm'rs*, 744 F.2d 28, 30 (6th Cir.1984), the source of such interference—the federal injunction—is obvious. Likewise, the source is obvious where the federal plaintiff seeks declaratory relief designed to adjudicate issues identical to those raised in ongoing state proceedings. *See Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 767–68, 27 L.Ed.2d 688 (1971) (in such case "the declaratory relief alone has virtually the same practical impact as a formal injunction would"); *see also Rogers v. Desiderio*, 58 F.3d 299, 300 (7th Cir. June 20, 1995) ("abstention under Younger's designed to prevent interference with proceedings presenting important issues of state policy or power either direct (as by enjoining their continuation) or indirect (as by deciding an issue before the state tribunal and, under the law of preclusion, preempting the State's consideration of the issue)").

■ In challenging the district court's decision to invoke *Younger* abstention in this case, Warmus seizes upon what he perceives to be an absence of potential undue federal interference. He maintains that his federal action, since it seeks money damages only and neither injunctive nor declaratory relief, did not interfere with AFSLIC's appeal of the rehabilitation order and will not interfere with AFSLIC's rehabilitation currently pending in the Circuit Court of Cole County, *i.e.*, the two ongoing state proceedings.

■ The Supreme Court has not decided the question whether *Younger* is applicable to a federal action like Warmus's "seeking only monetary relief." *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988); *Juidice v. Vail*, 430 U.S. 327, 339 n. 16, 97 S.Ct. 1211, 1219 n. 16, 51 L.Ed.2d 376 (1976) ("we intimate no opinion as to the applicability of [*Younger* ] principles to a § 1983 suit seeking only [damages] in the district court"). We, however, have recognized that a federal money damages action can, in some circumstances, interfere with ongoing state proceedings sufficiently to warrant abstention. *See Wolfson v. Mutual Benefit Life Ins. Co.*, 51 F.3d 141, 147 (8th Cir.1995) ("we do not read the Supreme Court's abstention jurisprudence as completely foreclosing abstention in money damages cases"); *see also McCurry v. Allen*, 606 F.2d 795, 799 (8th Cir.1979) (applying *Younger* abstention doctrine in section 1983 action seeking money damages only), *rev'd on other grounds*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Such interference is possible, however, if only the issues presented in the federal damages action have a "substantial relationship to ... [the ongoing] state proceeding." *See Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir.1992); *Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1201 (3d Cir.1992) ("where abstention is appropriate, there is often a nexus between the claims asserted in the federal action and the defenses or claims asserted or

available in the state action"); *AFCME v. Tristano,* 898 F.2d 1302, 1305 (7th Cir.1990) (*Younger* abstention unwarranted because "the issues in the federal suit are substantially different from the issues in the state proceedings").

Acknowledging our *Lannan* "substantial relationship" test, or something close to it, Warmus contends that the issues comprising his federal damages claim are not substantially related to either of the two ongoing state proceedings. He observes that his damages action only challenges the personal conduct of three Missouri insurance officials which occurred during AFSLIC's administrative supervision. In contrast, he asserts AFSLIC's appeal strictly "concerns whether AFSLIC was operating in a hazardous condition as of September 30, 1992 and whether rehabilitation was warranted." Likewise, AFSLIC's rehabilitation, he further asserts, merely concerns "the condition or status of an insurance company in rehabilitation."

We agree with Warmus that his federal damages action is generally confined to challenging appellees' personal conduct. We disagree, however, with the notion that appellees' personal conduct bears no substantial relationship to either of the ongoing state proceedings. First, appellees' conduct was clearly in issue in AFSLIC's appeal inasmuch as AFSLIC argued that MDI should be equitably estopped from disallowing the full nine months of Lloyds treaty reserve credits. *See Angoff v. American Financial Security Life Ins.,* 869 S.W.2d, 90, 92. Although it is unclear who at MDI made the decision to disallow the full number of credits, appellees were the ones at MDI who originally approved the Lloyds treaty. In that way, they created the basis for AFSLIC's equitable estoppel argument directed at MDI. Secondly, we believe appellees' personal conduct may become an issue in AFSLIC's rehabilitation. For instance, were Warmus to win his federal damages action prior to the conclusion of AFSLIC's rehabilitation, the resulting federal judgment would amount to a declaration that appellees, all of whom are high-ranking officials at MDI, conspired to drive Warmus out of business without due process of law. *See Fair Assessment in Real Estate Ass'n v.*

*McNary,* 454 U.S. 100, 113, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981) ("[p]etitioners will not recover damages under § 1983 unless a district court first" declares their constitutional rights were violated). Such an effective declaration, in our view, might well have the practical effect of undermining the validity and integrity of the state-court rehabilitation proceedings. *See Samuels,* 401 U.S. at 72, 91 S.Ct. at 767–68 (suggesting that courts contemplating *Younger* abstention focus on the "practical effect" of the requested federal relief).

Warmus's federal damages action therefore bears a substantial relationship to AFSLIC's appeal of the rehabilitation order, as well as to its rehabilitation currently pending in state circuit court. *See Lannan,* 979 F.2d at 631. Furthermore, given this substantial relationship to both proceedings, it follows that the vital prerequisite to *Younger* abstention—potential undue federal interference—is present in this case. Thus, provided the three *Middlesex* factors can be satisfied, the district court acted within its discretion in abstaining under *Younger.* Predictably, Warmus contends none of the three *Middlesex* factors can be satisfied. We address each in turn.

 Regarding the first *Middlesex* factor, Warmus argues that since he was not a party to either AFSLIC's appeal or its rehabilitation, no ongoing state proceedings existed with respect to him at the time he filed his federal complaint. *See Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. We disagree. Since Warmus is the "beneficial owner, officer, and director" of AFSLIC, he is subject to *Younger* considerations otherwise applicable only to AFSLIC. *See Doran v. Salem Inn,* 422 U.S. 922, 928, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975) ("there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them"); *see also Postscript Enters., Inc. v. Peach,* 878 F.2d 1114, 1116 (8th Cir.1989); *Women's Serv., P.C. v. Douglas,* 653 F.2d 355, 358 (8th Cir. 1981).

Warmus cannot, and does not, seriously dispute that the second *Middlesex* factor can

be satisfied. Both AFSLIC's appeal and its rehabilitation involved the subject matter of insurance regulation. We have twice held, for purposes of *Younger/Middlesex,* that states have an important interest in regulating their domestic insurers. *See Alleghany Corp. v. Pomeroy,* 898 F.2d 1314, 1318 (8th Cir.1990); *McCartney,* 896 F.2d at 1144.

■ Finally, with regard to the third *Middlesex* factor, Warmus maintains that he had no opportunity to bring a civil rights action against appellees within the confines of AFSLIC's rehabilitation proceeding. *See Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. We note, however, that AFSLIC, which is one and the same as Warmus for *Younger* purposes, *see Doran,* 422 U.S. at 928, 95 S.Ct. at 2566, attempted to bring such an action in its rehabilitation. In May 1993, it filed a "Motion for Authority to File Suit on Behalf of Defendant" in the Circuit Court of Cole County, asking the court for permission to file a civil rights action against appellees and "possibly other present and former employees of [MDI]." Its attempt fell short when the court denied its motion. Rather than appealing this denial, AFSLIC deferred to Warmus's filing of the instant action in the district court. We agree with appellees that this amounted to an improper detour of the state's opportunity to address the constitutional claims against appellees. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 609, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975) ("a necessary concomitant of *Younger* is that a party ... must exhaust his state appellate remedies before seeking relief in the district court"); *McCartney,* 896 F.2d at 1144 ("a party cannot avoid *Younger* by choosing not to pursue available state appellate remedies").

We therefore hold that the third *Middlesex* factor, like the first two such factors, is satisfied, and conclude the district court did not abuse its discretion by choosing to abstain under *Younger.*

## II.

Alternatively, appellees ask this court to affirm the judgment of the district court on grounds of qualified immunity, a defense which was raised but not addressed in the district court. Because we hold the district court properly abstained on the basis of *Younger,* we decline to reach the topic of qualified immunity.

## III.

For the foregoing reasons, the judgment of the district court is affirmed.