**PELLEGRINO FOOD PRODUCTS COMPANY, et al., Plaintiffs,**

v.

**CITY OF WARREN, et al., Defendants.**

**No. CIV.A. 00–153 Erie.**

United States District Court, W.D. Pennsylvania.

Dec. 6, 2000.

Kevin F. Berry, Thomas B. Fiddler, Cozen & O'Connor, Philadelphia, PA, for Plaintiffs.

Joseph J. Bosick, Jeannette H. Ho, Michael McAuliffe Miller, Pietragallo, Bosick & Gordon, James R. Schadel, Weinheimer,

Schadel & Haber, Pittsburgh, PA, James T. Marnen, Knox, McLaughlin, Gornall & Sennett, Erie, PA, for Defendants.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Plaintiffs, the Pellegrino Food Products Company (hereinafter "Pellegrino Foods"), Anthony Pellegrino, Sr., Angela M. Pellegrino and Thomas Pellegrino, seek in this action damages and injunctive relief for numerous alleged violations of 42 U.S.C. § 1983 (hereinafter "section 1983") and several state laws. *See* Complaint, ¶¶ 205–275. The case arises out of Pellegrino Foods' efforts to expand and the resistance it faced from Warren officials, neighborhood residents, and a law firm. Presently before the Court are three motions: 1) a Motion to Dismiss filed by the "City Defendants"[1]; 2) a Motion to Dismiss filed by Defendant Swanson, Bevivino, Gilford and Stewart, P.C. (hereinafter "Swanson Bevivino"), a law firm; and 3) a Motion for Judgment on the Pleadings filed by the "Neighbor Defendants."[2] For the reasons that follow, we grant in part and deny in part the City Defendants' motion, grant Swanson Bevivino's motion and grant in part and deny in part the Neighbor Defendants' motion.

## I. BACKGROUND

The allegations set forth in the Plaintiffs' Complaint are taken as true for purposes of the motions before us, and are as follows:

Pellegrino Foods is a family-owned business that manufactures and sells food products including peppers, strombolis, pizza bread and pot pies. *See* Complaint ¶ 34. From the inception of the business in the early 1950s until 1972, Anthony and Angela Pellegrino operated it from the basement of their home. In 1972, the company leased a room from the Warren County Dairy Association Plant located at 100 Lookout Street in Warren, Pennsylvania. The Pellegrinos purchased this plant in 1974, and presently lease it to Pellegrino Foods. The Plant property has at all times since the late 1800s been used for industrial and manufacturing purposes. *See* Complaint ¶ 37.

In 1981, the City of Warren zoned the property R–2 residential despite Plaintiffs' objections. *See* Complaint ¶ 40. The City of Warren uses a grant program to encourage the growth of businesses within the city, and Pellegrino Foods received a grant under this program in 1993 in the form of a low-interest loan. *See* Complaint ¶ 50.

Pellegrino Foods applied for a building permit on June 14, 1993 in order to construct a 40′ by 65′ freezer unit on the Plant property. Santo Pascuzzi, the chief of the Warren fire department and overseer of the Warren Zoning Officer, replied by correspondence of July 2, 1993 that the permit could not issue absent a special exception from the Zoning Hearing Board. *See* Complaint ¶ 53. Pellegrino Foods applied for the required exception and attended hearings on the matter. William A. Bevivino, one of the neighbor defendants and a partner in the Swanson Bevi-

---

1. The City Defendants are the City of Warren and city officials John R. Nemcovsky, Mary E. Conarro, Mark Danielson, Mark A. Phillips, Mark Zavinski, Donald A. Worley, A. Kenneth DuPont, Richard Poorman, Santo Pascuzzi, William F. Morgan, George Crozier, Randy Mineweaser, Donald F. Davis, David M. See and James R. Carbon. *See* Defendants' Motion to Dismiss.

2. The Neighbor Defendants are William A. Bevivino, Rita Bevivino, Glenn M. Belleau, Mary Belleau, Sherwood N. Fleming, Dorothy L. Fleming, Peter H. Smith and Margery R. Smith. *See* Defendants' Motion for Judgment on the Pleadings.

vino law firm, attended these hearings and voiced opposition to the expansion. *See* Complaint ¶ 59. Bevivino specifically argued that noise caused by trucks at the Plant exceeded permissible limits. The Zoning Board required Pellegrino Foods to retain an expert to measure the noise emanating from the Plant, and the Pellegrinos complied with this requirement. *See* Complaint ¶ 64.

In an August 10, 1993 correspondence on Swanson Bevivino letterhead, Bevivino submitted a number of arguments to the Zoning Hearing Board regarding the special exception, including that the freezer was not a "natural expansion," that it would be detrimental to the public welfare, health and safety, that Pellegrino Foods would need to designate parking spaces to obtain the special exception, and that the Zoning Hearing Board should attach conditions to the special exception. *See* Complaint ¶ 65. At the reconvened hearing on August 17, 1993, the Pellegrinos' noise level expert testified that the Plant levels were in the permissible range. Crozier, the Zoning Hearing Board Chairman, conducted an independent investigation of the noise levels subsequent to the hearing. *See* Complaint ¶ 68. By a second correspondence on Swanson Bevivino letterhead dated August 31, 1993, Bevivino argued that Pellegrino Foods did not meet the necessary requirements for a building permit. This letter was sent to Dale Jones of the City's building permit office and copied to City Solicitor William F. Morgan, all members of the Warren City Council, and David Hildebrand. *See* Complaint ¶ 71. The special exception was granted on September 24, 1993 subject to six conditions.[3]

The Pellegrinos complied with these conditions and finished construction of the freezer in December of 1993. *See* Complaint ¶¶ 77–78.

John R. Nemcovsky was elected Mayor of Warren in 1994. He owns and operates Moldsmiths, Inc., a company that contracted with Kinzua Valley, Inc. prior to his election. Kinzua Valley, a business owned and operated by Thomas Pellegrino, brought suit against Moldsmiths to collect a debt on this contract. This suit precipitated a threat by Nemcovsky that all requests by Pellegrino Foods would be personally blocked by him if Thomas Pellegrino did not absolve the Moldsmiths' debt. *See* Complaint ¶ 84.

On September 12, 1996, Pellegrino Foods and the Warren County School District entered into an agreement of sale for 1.9 acres of school property adjacent to the plant and valuable to the Pellegrinos because it was landlocked. Shortly before the hearing on this matter, neighborhood resident Michael J. Howe offered to purchase the property for $5,000. Three of the four school board members residing in Warren publicly announced their support for the sale but ultimately voted against the agreement. *See* Complaint ¶ 98. The sale was approved by a 5–4 vote. Pellegrino Foods agreed to pay the higher of two appraisal values for the property, and the School Board thereafter petitioned the Court of Common Pleas for the required approval of the sale. In this matter, the School Board was represented by Arthur J. Stewart, a partner in the Swanson Bevivino law firm, and the hearing was conducted by Judge Paul Millin, a former law

---

**3.** The conditions to the special exception required Pellegrino Foods to do the following: 1) submit an updated parking plan; 2) provide "screens" on the north and south ends of the property; 3) certify that the freezer's compressor would not exceed 45 decibels of sound at any point on its boundary six feet above ground level; 4) post a bond of $5,000 subject to forfeiture upon violation of the 45 decibel limitation; 5) refrain from parking trucks on the property for extended periods of time; and 6) prohibit the dispatch, loading or unloading of trucks between 9:00 p.m. and 6:00 a.m. *See* Complaint ¶ 73.

partner of both Stewart and Bevivino. *See* Complaint ¶ 111. Judge Millin denied approval of the sale, and was reversed by the Commonwealth Court.

The Complaint alleges that Warren's zoning ordinance requires businesses to have a number of parking spaces corresponding to the size of the business, and that Bevivino and the City conspired to limit the number of parking spaces available to Pellegrino Foods. *See* Complaint ¶ 116. Bevivino wrote a letter to City Manager DuPont regarding the parking area on the Lookout Street side of the property, and Zoning Officer Worley instructed the Pellegrinos to stop using this parking area by correspondence of September 10, 1998. The Zoning Hearing Board, upon appeal by the Pellegrinos, affirmed Worley's decision. The Court of Common Pleas reversed the decision of the Zoning Board. *See* Complaint ¶ 127.

On September 14, 1998, the Pellegrinos applied for a subdivision approval in order to annex the School property to the Plant property. *See* Complaint ¶ 130. This annexation was opposed by Bevivino and Planning Commission members David See and James Carbon. Despite the Pellegrinos' objections, the Planning Commission was represented by Swanson Bevivino in this matter. In or about 1999, the City adopted a new Comprehensive Plan and reaffirmed the residential classification of the plant property, denying a request by the Pellegrinos to change the classification to industrial and manufacturing. The Plaintiffs allege that other property owners made similar rezoning requests that were granted. *See* Complaint ¶ 139.

On March 22, 1999, the Pellegrinos applied for a special exception in order to construct an addition to the plant. Shortly after this request, neighbor defendant Glenn Belleau complained to the Warren police of noise coming from trucks at the plant. The police issued a citation to Pel-legrino Foods based on this complaint. *See* Complaint ¶ 154. Plaintiffs allege that the police have pulled over trucks traveling to the Plant and harassed drivers of trucks parked at the Plant.

On April 19, 1994, upon receiving the Court of Common Pleas' decision reversing the Zoning Board and permitting the Pellegrinos to use the Lookout Street parking spaces, City Solicitor Morgan, Fire Chief Pascuzzi, Zoning Officer Worley, Police Chief Poorman and City Manager DuPont convened a meeting. *See* Complaint ¶¶ 155, 156. At this meeting, the attendees discussed possible means of preventing Pellegrino Foods from expanding. *See id.* According to the Plaintiffs, the attendees resolved at this meeting to charge the Pellegrinos with noise violations and harass the trucks traveling to and from the Plant property. *See id.*

Mayor Nemcovsky convened a meeting attended by Pascuzzi, Poorman, Worley, Morgan, DuPont, and William A. Bevivino on May 3, 1999 for the purpose of determining whether criminal charges could be filed against the Pellegrinos for violations of the 1993 special exception's conditions. *See* Complaint ¶ 162. The attendees suggested that a list of people provided by Bevivino could be contacted and asked to complain about Pellegino Foods if no complaints had been filed. *See* Complaint ¶ 163. A similar meeting was held on May 5, 1999. *See* Complaint ¶ 164. Belleau complained a second time to the police of noise emanating from the plant, purportedly to fabricate evidence for a criminal charge. Zoning Hearing Board attorney Fraser advised Worley that there was no basis for enforcement action against Pellegrino Foods. Plaintiffs claim that other businesses in Warren are located in largely residential areas and generate noise levels higher than the level generated by the Pellegrino Foods Plant. *See* Complaint ¶ 169.

Several days prior to a scheduled hearing on Pellegrino Foods' proposed expansion, Zoning Board member George Crozier traveled door to door soliciting opinions on the expansion, and several days after the hearing, Board member Donald Davis conducted a similar inquiry. *See* Complaint ¶¶ 174, 179. The hearing itself was held on May 20, 1999, and was attended by the Neighbor Defendants. The Board granted the expansion, subject to eight conditions alleged by the Pellegrinos to be unlawful, improper, and imposed in order to provide a basis for future harassment and make the expansion of Pellegrino Foods cost-prohibitive.[4] *See* Complaint ¶¶ 183–188. The Pellegrinos and the neighbor defendants took separate appeals to the Zoning Board's decision, and the Pellegrinos' appeal is currently pending in the Court of Common Pleas of Warren County. Notwithstanding this appeal, Plaintiffs allege that Pellegrino Foods complied with each of the eight conditions and was nonetheless denied the necessary permits by Zoning Officer Worley. *See* Complaint ¶¶ 191–193. Worley said he would not give the Pellegrinos the foundation permit for the expansion until an electrical and mechanical plan, which was not one of the original eight conditions, was submitted. A similar plan was not required for any other construction project in the city. To compel the issuance of the needed permits, Pellegrino Foods brought a mandamus action against the City. In response, Solicitor Morgan stated that the necessary permits would be issued if Pellegrino Foods agreed to a general release for all harm caused by the City. The Plaintiffs refused to give this release, and allege that the City filed frivolous motions in the mandamus action in retaliation. *See* Complaint ¶ 200. On October 16, 2000, the Court of Common Pleas granted the Defendants' Motion for Summary Judgment in the mandamus action.

Plaintiffs filed this action on May 26, 2000. They seek damages and permanent injunctive relief for violations of section 1983 and conspiracy to violate section 1983,[5] and damages for the tortious interference with business relationships, violation of the Pennsylvania Dragonetti Act, 42 Pa.C.S.A. § 8351, and abuse of process.[6]

---

4. The conditions were as follows: 1) a new parking plan would be submitted prior to construction that did not use spaces on the Lookout Street side of the property; 2) screening would be established on the north and south ends of the property, 3) noise levels would not exceed 65 decibels between 6:00 a.m. and 9:00 p.m. and 45 decibels between 9:00 p.m. and 6:00 a.m.; 4) trucks would not be dispatched, loaded or unloaded between 9:00 p.m. and 6:00 a.m.; 5) an expert would be retained to study odors from its food processing operations and prepare a report on how the odors could be controlled; 6) impervious pavement would be installed for all areas used for parking or vehicular movement, and a bond of $75,000 would be subject to forfeiture if the initial installation was not completed; 7) trucks would not park on the plant property for extended periods of time; and 8) a bond payable to the benefit of the city for $100,000 would be posted to ensure compliance with all of the conditions.

5. Plaintiffs' section 1983 and conspiracy to violate section 1983 claims are based on alleged deprivations of substantive due process, procedural due process, and equal protection in violation of the Fourteenth Amendment to the United States Constitution. *See* Complaint ¶¶ 205–258. Hereinafter, a general reference to the "section 1983 claims" or the "conspiracy to violate section 1983 claims" includes all three of these bases. Count I seeks damages from all defendants based on the section 1983 violations, Count II seeks equitable relief for the violations from the City Defendants only, and Count III seeks damages from all defendants based on an alleged conspiracy to violate section 1983.

6. We have some difficulty throughout this opinion ascertaining the factual allegations that support the various claims due to Plaintiffs' overinclusive method of pleading. The factual allegations are set forth first in the Complaint and comprise almost thirty-four

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings is not granted "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan American World Airways*, 863 F.2d 289, 290 (3d Cir.1988) (quoting *Society Hill Civic Assoc. v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980)). A motion to dismiss is not granted unless the claimant would not be entitled to relief under any set of facts that could be established in support of his or her claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A motion for judgment on the pleadings pursuant to Rule 12(c) and a motion to dismiss pursuant to Rule 12(b)(6) are assessed under the same standard. *See Bensinger v. Fanrock*, 1999 WL 1081051, *1 (E.D.Pa. Dec.1, 1999) (citing *Constitution Bank v. DiMarco*, 815 F.Supp. 154, 156 (E.D.Pa. 1993). Respecting both, this Court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to plaintiffs. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir.1997).

## III. DISCUSSION

### A. The City Defendants

The City Defendants raise seven arguments in support of their Motion to Dismiss and incorporate several additional arguments from Swanson Bevivino's Motion to Dismiss. We examine each in turn.

1. Plaintiffs' Failure to Join the Zoning* Hearing Board as a Defendant

■ The City Defendants first argue that the Plaintiffs' failure to join the Zoning Hearing Board is fatal to their civil rights claims. Specifically, they contend that because the Board possesses the sole power to grant or deny Plaintiffs' land use requests under Pennsylvania law and Plaintiffs' civil rights claims arise from unfavorable land use decisions, it is the only appropriate party to the claims. Extending this argument, the City Defendants argue that all civil rights claims against the non-Zoning Board City Defendants should be dismissed because they have no statutory authority to make land use determinations and made no such determinations in this case. *See* Defendant's Brief in Support of Motion to Dismiss at 3.

We disagree. Initially, it is unnecessary for the Plaintiffs to name the Zoning Board as a defendant. The Complaint names three Board members in their official capacities as defendants, and because these members work through the Zoning Board, the Plaintiffs have for all intents and purposes named the Zoning Board itself. *See Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

■ We also find that the Complaint sufficiently alleges joint and concerted activity such that the City Defendants who are not members of the Zoning Board are proper defendants to the civil rights claims. In our discussion in section A.8 *infra*, we dismiss all claims against seven City Defendants but find that the Plaintiffs' allegations against those that remain are sufficient to infer the personal involvement necessary to establish a section 1983 claim. These Defendants include the Mayor, the City Manager, the Zoning Officer,

pages. The claims are then set forth on pages 34–52, and in many instances generically reference the factual allegations without indicating the specific facts that support the particular claims. The claims also frequently refer to all of the defendants, and are overinclusive in this regard as well.

the City Solicitor, the Police Chief, and the Fire Chief, all of whom are alleged to have participated in one or more meetings specifically intended to prevent Pellegrino Foods from expanding. *See* Complaint ¶¶ 155–56,162–64. We therefore do not dismiss them from the Plaintiffs' civil rights claims.

## 2. Younger Abstention

At the time Plaintiffs commenced this action, two appeals were pending in the Court of Common Pleas of Warren County. As represented at oral argument, one of these appeals, Plaintiffs' challenge to the Zoning Board's 1999 special exception decision, is still pending. The other appeal, Plaintiffs' request for a Writ of Mandamus to compel the issuance of a building permit, was decided in favor of the Defendants prior to oral argument but after pleadings had been filed in this action. The City Defendants argue that the first appeal bars Plaintiffs' causes of action that are attempts to "litigate, relitigate, or enjoin" the issues raised in this proceeding under the doctrine of *Younger* abstention,[7] and that the decision in the mandamus action bars Plaintiffs' selective enforcement claim under the doctrine of collateral estoppel.[8]

■ The decision to abstain is an extraordinary one. Although federal courts have discretion to grant or deny certain forms of relief, the scope of federal jurisdiction is determined by Congress. *See*

*New Orleans Pub. Serv. v. Council of New Orleans*, 491 U.S. 350, 357–60, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Due to this division of authority, the doctrine of abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. . . ." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (*quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). *Younger* abstention is applicable only when: 1) there are ongoing state proceedings that are judicial in nature; 2) the state proceedings implicate important state interests; and 3) the state proceedings afford an adequate opportunity to raise the federal claims. *See Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195, 1200 (3d Cir.1992) (*citing Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)).

■ In the action before us, the Plaintiffs have not challenged the zoning ordinance being applied in the state proceeding. They also have not requested that the state proceeding be enjoined as is the typical case in *Younger* abstention situations. For these reasons, we find that hearing the Plaintiffs' claims would not interfere with the state's interest in formulating and implementing its own land use

---

**7.** The City Defendants do not set forth the claims that are subject to abstention. Instead, they state that, due to Plaintiffs' overly inclusive method of pleading, the "causes of action subject to abstention will have to be parsed out of certain counts in the Complaint." Defendants' Brief in Support of Motion to Dismiss at 4, n. 2. They do state that the claims for conspiracy, other specific acts of the Defendants as plead and damages are not barred. For future reference, we stress that it is the Defendants' responsibility to identify with particularity the facts that sup-

port its claims. That this task may be difficult or time-consuming does not excuse the obligation.

**8.** We do not reach the collateral estoppel argument at this time. It was raised for the first time at oral argument and we have not notified the parties of an intent to convert the City Defendants' Motion to Dismiss to a Motion for Summary Judgment. We will revisit the issue, if at all, if it is raised in a Rule 56 motion.

policy as the case before us is not a land use case. For the most part, we also find that hearing the claims would not interfere with the state's interest in adjudicating its cases without interruption by a federal court although we qualify this statement somewhat below. Essentially, however, the Plaintiffs' claims are similar to those addressed by the Third Circuit in *Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 970 F.2d 1195 (3d Cir.1992) and *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743 (3d Cir.1982), *cert. denied* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982), in that they challenge an ordinance's application rather than its substance. Because of this fact, we find that the claims asserted in the federal complaint, similar to those addressed in *Heritage Farms* and *Gwynedd Properties,* neither involve nor implicate important state policies. *See Gwynedd Properties,* 970 F.2d at 1202. We therefore do not abstain from hearing the Plaintiffs' claims on this basis.

■ We do, however, abstain from hearing Plaintiff's claim for injunctive relief; that we "enjoin permanently the City, the City Officials, and any and all of its representatives from considering or rendering any decision on any matter pertaining to Pellegrino Foods." *Ad damnum* clause of Count II of Plaintiffs' Complaint. We do so under *Younger,* finding that this relief would potentially nullify the outcome of the pending state proceeding relative to the special exception, and also pursuant to more fundamental conceptions of our role in this dispute. We find Plaintiffs' request to be similar to and perhaps even more expansive than the one addressed in *Gwynedd* that officials be prohibited from interfering with a developer's lawful use of its property and from arbitrarily denying approvals and permits to which the developer claimed to be entitled. *See Gwynedd Properties,* 970 F.2d at 1204. The *Gwynedd* court held that abstention was proper

under *Younger* to the extent that the injunction would have the effect of nullifying the effect of one particular state court injunction proceeding, and also stated that abstention was appropriate in order to prevent a de facto review of other zoning decisions then under review in the state courts, citing the principle that a court should not serve as a zoning board of appeals. *See id.*

We similarly find that issuing the requested injunction in this case would potentially nullify the effect of the pending state proceeding respecting the special exception. It seeks to preclude the City Defendants from all future decisionmaking concerning the Plaintiffs, and conceivably, the outcome of the state proceeding would require the City Defendants to make future decisions regarding the special exception consistent with its opinion. Equally if not more importantly, we also find that the injunction would preclude future Zoning Board decisions respecting Pellegrino Foods based on proper zoning factors, thereby improperly transforming the court's role into that of an automatic review board. If members of the Zoning Board are unable to render future decisions pertaining to Pellegrino Foods, presumably all future rendered decisions would be voided by operation of the injunction. We are not prepared to issue an injunction potentially having this effect, and therefore abstain from entertaining Plaintiffs' injunctive relief claim as it runs afoul of both *Younger* and the companion principle that de facto review of zoning decisions by a court is improper.

### 3. Statute of Limitations

The statute of limitations for section 1983 actions in Pennsylvania is two years. *See Kost v. Kozakiewicz,* 1 F.3d 176, 189–90 (3d Cir.1993). In a conspiracy claim, this period runs from each overt act causing damage, meaning that a claimant must

seek redress for each act causing injury within the prescribed limitations period and cannot rely on the last overt act to toll the period. *See id.* at 191 (*citing Wells v. Rockefeller,* 728 F.2d 209, 217 (3d Cir.1984) *cert. denied,* 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985)). Plaintiffs' claims for violations of section 1983 and conspiracy to violate section 1983 are therefore dismissed to the extent they rely on events occurring prior to May 26, 1998. The doctrine of fraudulent concealment does not toll the limitations period in this case because there are no allegations that the Plaintiffs were actively misled into believing they did not have a cause of action against the Defendants, and the allegations in fact make clear that the Plaintiffs were aware of each act giving rise to their claims as it occurred. *See Forbes v. Eagleson,* 228 F.3d 471, 486–87 (3d Cir.2000).

### 4. Procedural Due Process

■ We dismiss Plaintiffs' procedural due process claims against the City Defendants. As a matter of law in this Circuit, adequate due process is afforded when a state provides reasonable remedies to rectify a legal error by a local administrative body. *See Bello v. Walker,* 840 F.2d 1124, 1128 (3d Cir.1988), *cert. denied,* 488 U.S. 851, 109 S.Ct. 134, 102 L.Ed.2d 107 (1988) and 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); *Midnight Sessions, Ltd. v.. City of Philadelphia,* 945 F.2d 667, 680 (3d Cir.1991), *cert. denied,* 503 U.S. 984, 112 S.Ct. 1668, 118 L.Ed.2d 389 (1992). Plaintiffs, however, assuming the viability of this argument, argue that it is inapplicable because of bias on the part of the city officials. This is an incorrect statement of the law. A violation of procedural due process requires that a decision be made pursuant to a constitutionally deficient procedure, and not merely that a decision be made wrongfully. *See Bello,* 840 F.2d at 1128 ("While the Pennsylvania courts have ruled that the initial decision to deny the permit was wrong, the plain-

tiffs have not and cannot show that the decision was made pursuant to a constitutionally defective procedure."). The availability of an adequate appeal mechanism satisfies the requirements of procedural due process irrespective of whether the plaintiff utilizes the mechanism. *See DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell,* 53 F.3d 592, 597 (3d Cir.1995), *cert. denied,* 516 U.S. 937, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995) (*citing Midnight Sessions,* 945 F.2d at 682). Similar to *Bello,* that Pennsylvania affords a full judicial mechanism for challenging the administrative land use decisions at issue is discernible from the Plaintiffs' resort to the state courts on several occasions. *See Bello,* 840 F.2d at 1128. There are no allegations from which we can infer that this procedure is unconstitutional, and the Plaintiffs' procedural due process claims are therefore dismissed. For point of clarification, the section 1983 claims that remain are based on violations of equal protection and substantive due process. *See* Complaint Counts I, II, and III.

### 5. Governmental Immunity

■ Plaintiffs' claims against the City of Warren for tortious interference with business relationships, violations of the Dragonetti Act, 42 Pa.C.S.A. § 8351, and abuse of process in Counts IV, V and VI are dismissed. Under Pennsylvania law, a claimant seeking to impose liability on a local agency has the burden of establishing: "(1) that a common-law or statutory cause of action exists against the local agency as a result of a negligent act of a local agency or its employee acting within the scope of his employment, 42 Pa.C.S.A. § 8542(a), and (2) that the negligent act falls within one of the eight exceptions to sovereign immunity enumerated in subsection 8542(b) of the Judicial Code, 42 Pa. C.S.A. § 8542(b)." *See City of Philadel-*

*phia v. Glim*, 149 Pa.Cmwlth. 491, 613 A.2d 613, 616 (1992). A city is a "local agency" under this statute. *See Amnesty America v. County of Allegheny*, 822 F.Supp. 297, 301 (W.D.Pa.1993).

 Because the Plaintiffs' state law claims in this case aver intentional acts, § 8542(a) does not apply and the City is absolutely immune. As stated in *Glim:*

> To the extent that Claimant has averred willful misconduct on the part of City employees, the unequivocal wording of subsection 8542(a)(2) of the Judicial Code, 42 Pa.C.S. § 8542(a)(2), bars Claimant's recovery from the City. Subsection 8542(a)(2) declares that liability may be imposed on a local agency only for negligent acts which subsection 8542(a)(2) defines as excluding acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.

*Glim*, 613 A.2d at 617. In contrast to the City, however, the City Defendants are not immune for their intentional torts pursuant to § 8550. This section provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of section 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages shall not apply.

42 Pa.C.S. § 8550. For purposes of the Pennsylvania Judicial Code, the term "willful misconduct" has the same meaning as the term "intentional tort." *See Delate v. Kolle*, 667 A.2d 1218, 1221 (Pa. Commw.1995), *app. denied*, 544 Pa. 677, 678 A.2d 367 (1996). It denies immunity to the employees of local agencies, the

individually named City Defendants in this case, but does not deny immunity to the City itself. *See Cooper v. City of Chester*, 810 F.Supp. 618, 626 n. 8 (E.D.Pa.1992); *Glim*, 613 A.2d at 617. We therefore dismiss the Plaintiffs' pendent state law claims against the City of Warren but do not dismiss these claims against the City defendants in their individual capacities.

### 6. Punitive Damages

 In Counts I and III, Plaintiffs seek punitive damages from all Defendants for violations of section 1983 and conspiracy to violate section 1983. In Counts IV and VI, Plaintiffs seek punitive damages from all Defendants for tortious interference with business relationships and abuse of process. In Count V, Plaintiffs seek punitive damages against the City Defendants for violations of the Dragonetti Act. As discussed above, we have already dismissed the state law damages claims in Counts IV, V and VI against the City and the City Defendants in their official capacities under the doctrine of governmental immunity. We now dismiss the punitive damages claims against the City and the individual City Defendants in their official capacities in Counts I and III.

Punitive damages are not recoverable from municipalities in section 1983 actions. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 13, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (*citing Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Plaintiffs claims for punitive damages from the City in Counts I and III are therefore dismissed. Similarly, punitive damages are not recoverable in connection with section 1983 claims brought against an official in his or her official capacity, as these claims represent claims against the municipality itself. *See Johnson v. City of Erie*, 834 F.Supp. 873, 878 (W.D.Pa.1993). Thus, the official capacity claims against the individual City De-

fendants for punitive damages in Counts I and III are also dismissed. Any claims against the individual City Defendants in their individual capacities may proceed. *See id.*

### 7. Failure to State a Claim Against Certain Individual Defendants

The City Defendants argue that the Plaintiffs have failed to state a claim against two groups of individual City Defendants. One of these groups is comprised of Conarro, Danielson, Philips and Zavinski, members of the Warren City Council (the "City Council Defendants"). The other group is comprised of See, Carbon, and Mineweaser. Defendant See is a member of the Planning Commission and City Council, Defendant Carbon is a member of the Planning Commission, and Defendant Mineweaser is a member of the Zoning Board. We agree and therefore dismiss all claims against these Defendants.

Plaintiffs sole factual allegation against the City Council Defendants is that they made the Mayor's anti-Pellegrino Foods' position the official custom, practice and/or policy of Warren by intentionally adopting this position and/or by allowing it to pervade the government despite legal obligations to oppose unlawful actions. *See* Complaint ¶ 87. Plaintiffs' allege that Defendants See and Carbon, in particular, opposed the annexation of the School and Plant property in an attempt to hinder Pellegrino Foods' efforts to expand. *See* Complaint ¶¶ 131, 135. The only allegations against Mineweaser are that he took part in the November 5, 1998 and May 20, 1999 Zoning Board hearings as a member of the Board. *See* Complaint ¶¶ 126, 173. Presumably, he concurred in the resulting Board decisions to: 1) not permit the Pellegrinos to use the Lookout Street parking spaces; and 2) condition the granted expansion on eight allegedly unlawful restrictions. *See* Complaint ¶¶ 126, 187. We

find that the Plaintiffs have failed to allege a section 1983, conspiracy to violate section 1983, or tortious interference with prospective business or contractual relationship claim against these Defendants. Because we dismiss the wrongful use of civil proceedings and abuse of process claims against all of the City Defendants below, these seven Defendants are hereby dismissed from the case.

 In order to impose section 1983 liability on a defendant in his or her official capacity, a plaintiff must show that the defendant caused the complained of constitutional violations. *See Smith v. School District of Philadelphia*, 112 F.Supp.2d 417, 432 (E.D.Pa.2000) (*citing Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir.1995)). In order to demonstrate this through a policy of inaction, Plaintiffs must allege "facts tending to establish a prior pattern of similar violations, contemporaneous knowledge of improper conduct, or failure to remedy continuing constitutional deprivations." *Id.* (*quoting Boemer v. Patterson*, No. Civ.A. 86–2902, 1987 WL 13741, at *4 (E.D.Pa. July 14, 1987). In order to state a section 1983 claim against these Defendants in their individual capacities, Plaintiffs must allege "participation, personal direction of the complained-of conduct or knowledge of and acquiescence in the complained-of conduct for each defendant; a supervisory relationship with someone who allegedly violated plaintiff's constitutional rights, without more, is insufficient." *Id.*

 We find that the Plaintiffs have failed to allege a section 1983 claim against any of these Defendants. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss," and courts have rejected "unwarranted in-

ferences" and "unsupported conclusions" in evaluating motions to dismiss. *Morse v. Lower Merion School District*, 132 F.3d 902, 906 n. 8 (3d Cir.1997) (*quoting* Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1357 (2d ed.1997)). The allegation against the City Council Defendants provides no support for the conclusion that they violated the Plaintiffs' constitutional rights through acquiescence in known constitutional violations. These Defendants did not attend either of the meetings at which Plaintiffs claim that a number of the City Defendants planned to deprive them of their rights. *See* Complaint ¶¶ 156, 162. There are no allegations that these Defendants ever communicated with the other City Defendants or were even remotely involved in the zoning matters that form the basis of the Plaintiffs' claims. As far as we can infer, the Plaintiffs charge the City Council Defendants with knowledge and acquiescence in the alleged constitutional violations by reason of their positions on City Council alone. We find that this allegation is an unsupported conclusion that we are not required to accept, and therefore dismiss the section 1983 and conspiracy to violate section 1983 claims against these Defendants. We also find that the sole allegation permits no inference that these Defendants tortiously interfered with the Plaintiffs' prospective business relationships, and dismiss this claim as well. Because we dismiss the wrongful use of civil proceedings and abuse of process claims against all of the City Defendants on other grounds below, the City Council Defendants are hereby dismissed from the case.

■■■■ We likewise dismiss the section 1983, conspiracy to violate section 1983, and tortious interference claims against Defendants See, Carbon, and Mineweaser. Similar to the allegations against the City Council Defendants, the Plaintiffs' allegations against these Defendants are unsupported by any facts from which we could infer a violation of the Plaintiffs' constitutional rights. The only factual allegation against Planning Commission Members See and Carbon is that they, "in particular," opposed the annexation of the School property to the Plant property. The only factual allegation against Zoning Board Member Mineweaser is that he took part in the Zoning Board hearings in his capacity as a member of the Board. An inference that See and Carbon violated the Plaintiffs' rights is not warranted from the sole fact that they opposed one of the Plaintiffs' zoning requests, and an inference that Mineweaser violated the Plaintiffs' rights is likewise not warranted from the fact that he served as a member of the Zoning Board and made decisions in this capacity. We note again that none of these Defendants are alleged to have taken part in either of the meetings attended by other City Defendants, or to have done anything other than act in their capacities as City Officials. Because we find that an inference of unconstitutional conduct is not warranted by the Plaintiffs' allegations, we dismiss Plaintiffs' section 1983 and conspiracy to violate section 1983 claims against See, Carbon, and Mineweaser.

We also dismiss the tortious interference claims against these Defendants for the reasons previously stated. Parenthetically, it also appears that most of the alleged conduct with respect to these Defendants occurred when the prospective business relationships did not yet exist. The hearing on the annexation occurred on September 14, 1998 and the hearing that Mineweaser took part in respecting the parking spaces occurred on November 5, 1998. *See* Complaint ¶¶ 130, 135, 123. Only the expansion hearing occurred after the prospective relationships may have existed, on May 20, 1999. *See* Complaint ¶¶ 172, 173.

8. Failure to Allege Claims for Wrongful Use of Civil Proceedings, Abuse of Process, and Tortious Interference with Prospective Business and Contractual Relationships

The City Defendants filed leave to amend their Motion to Dismiss for the purpose of incorporating several arguments made in Swanson Bevivino's Motion to Dismiss. We issued an order deeming the identified arguments incorporated by reference, and now dismiss Plaintiffs' claims against the City Defendants in their individual capacities for wrongful use of civil proceedings and abuse of process. We do not, however, dismiss Plaintiffs' claim against the City Defendants in their individual capacities for tortious interference with prospective business and contractual relationships.[9]

■ Plaintiffs contend that the City Defendants violated the Dragonetti Act[10] when they challenged the ability of Pellegrino Foods to use the parking spaces along the Lookout Street side of the Plant property. *See* Complaint ¶ 266. This challenge, however, was effectuated by a letter from Zoning Officer Worley instructing the Pellegrinos to stop using these parking spaces, and not by a civil proceeding. *See* Complaint ¶ 120. A proceeding is defined in Pennsylvania as "every declaration, petition or other application which may be made to a court under law or usage or under special statutory authority, but ... not an action or an appeal." 42 Pa.C.S.A. § 102. Following Worley's letter, it was the Plaintiffs who appealed to the Zoning Board and then to the Court of Common Pleas. The tort of wrongful use of legal proceedings arises "when a party institutes a lawsuit with a malicious motive and lacking probable cause." *Rosen v. American Bank of Rolla*, 426 Pa.Super. 376, 627 A.2d 190, 191 (1993) (*quoting Shaffer v. Stewart*, 326 Pa.Super. 135, 473 A.2d 1017, 1019 (1984)). "The essence of the tort of wrongful use of civil proceedings is the institution of a civil action for a malicious purpose and without probable cause." *Id.* In this case, there is no allegation of a civil proceeding, and therefore we do not and cannot infer that the City Defendants initiated or continued a civil proceeding for a malicious purpose. We therefore dismiss this claim against the City Defendants.

■ Plaintiffs also allege that the City Defendants engaged in abuse of process when they:

a. challenged the ability of Pellegrino Foods to expand naturally their nonconforming use;

b. challenged the ability of Pellegrino Foods to use parking spaces located on the Lookout Street side of the Plant;

---

9. We have already dismissed these claims against the City Defendants in their official capacities on the basis of governmental immunity. *See supra* section A.5.

10. The Pennsylvania Dragonetti Act, 42 Pa. C.S.A. § 8351, codifies the wrongful use of civil proceedings tort, and provides:

(a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and:

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required.—The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

42 Pa.C.S.A. § 8351.

c. challenged the ability of Pellegrino Foods to obtain the School Property;

d. challenged the ability of Pellegrino Foods to annex the School Property to the Plant property;

e. issued and filed false criminal complaints about noise emanating from Pellegrino Foods' operations; and

f. challenged the issuance of special exceptions and permits to Pellegrino Foods.

Complaint ¶ 274. The abuse of process tort is defined as the use of legal process against another "primarily to accomplish a purpose for which it is not designed." *See Rosen v. American Bank of Rolla,* 426 Pa.Super. 376, 627 A.2d 190, 192 (1993) (*quoting* Restatement (Second) of Torts § 682)). It requires a showing that a defendant "(1) used a legal process against the plaintiff, [sic] (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff." *Id.*

■ We find that the Plaintiffs have failed to establish that the defendants used a legal process against them, the first element of the tort. The term "process" has been interpreted in Pennsylvania to encompass all of the procedures incident to the litigation process, including discovery proceedings, the noticing of depositions and the issuing of subpoenas. *See Rosen v. American Bank of Rolla,* 426 Pa.Super. 376, 627 A.2d 190, 192 (1993). The Plaintiffs have not alleged that any litigation process was used against them by the City Defendants, however, and this is fatal to their claim. The alleged "challenges" do not themselves comprise a litigation process, and are not incidental to any litigation process. The criminal complaint, likewise, is not incidental to any litigation process and does not itself constitute a litigation process.

Although we decide this point on the basis that Plaintiffs have failed to allege that a legal process was used against them, we also find that none of the alleged bases for the claim indicate that any of the procedures used by the City Defendants, even if they were found to constitute a legal process or to be incidental to a legal process, were for a purpose other than that obtainable from the procedure itself. As stated by the Pennsylvania Supreme Court:

The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself such as the surrender of property or the payment of money by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the assurance of the process itself, which constitutes the tort (internal citations omitted).

*In re Larsen,* 532 Pa. 326, 616 A.2d 529, 592–93 (1992), *cert. denied,* 510 U.S. 815, 114 S.Ct. 65, 126 L.Ed.2d 34 (1993). In this case, the Plaintiffs have not alleged that the City Defendants' opposition to their expansion plans were for a purpose other than preventing the expansion from taking place. There is, in other words, no allegation of a collateral motive or purpose from which we could find that any process, even if it existed, was abused. The Plaintiffs' allegation that the City Defendants were motivated by animus rather than by a bona fide desire to preserve the residential character of the Plant property is immaterial absent an allegation of this abuse. There is simply no claim for abuse of process "where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 644 A.2d 188 (1994) (*quoting Shaffer v. Stewart,* 326 Pa.Super. 135, 473 A.2d, 1017, 1019 (1984)). We therefore dismiss Plaintiffs' abuse of process claim against the City Defendants.

 We do not dismiss Plaintiffs' claim against the City Defendants for tortious interference with prospective business and contractual relationships at this time. At this stage in the proceedings, we find it difficult for discerning a basis for applying the incorporated argument from Swanson Bevivino's Brief to the City Defendants.[11] The elements of a tortious interference with prospective business relationships claim in Pennsylvania are:

(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1343 (1988), *app. denied,* 519 Pa. 667, 548 A.2d 256 (1988). The Plaintiffs' Complaint alleges that inquiries were received regarding the production of different food products in early 1999. *See*

Complaint ¶ 142. We find that these inquiries constitute prospective contractual relations, which are defined in Pennsylvania as something less than a contractual right and more than a mere hope. *See Allstate Transportation Co., Inc. v. Southeastern Pennsylvania Transportation Auth.,* No. 971482, 1997 WL 666178, *11 (E.D.Pa. Oct.20, 1997). Although the Plaintiffs have not alleged the specific date on which the offers were received and therefore it is unclear when the relations first existed, it appears that the April, 1999 and May 3, 1999 meetings among other actions may have occurred after the relations existed and constituted the requisite purposeful action specifically intended to harm the relations. Finally, the Plaintiffs have sufficiently alleged that the interference was specifically intended to cause them harm, that the interference was without privilege or justification and that they sustained actual, legal damage as a result of the interference. *See* Complaint ¶¶ 260, 263.

## B. Swanson Bevivino

### 1. Section 1983 and Conspiracy to Violate Section 1983

 We dismiss all claims against Swanson Bevivino. Plaintiffs' section 1983

---

**11.** The argument made by Swanson Bevivino and incorporated by the City Defendants for dismissing this claim is that the acts out of which the claim arises are subject to judicial privilege under Pennsylvania law. This privilege accords absolute immunity to communications pertinent to any stage of judicial proceedings, including statements made by parties, witnesses, attorneys, and judges in open court as well as in less formal proceedings and routine correspondence exchanges between counsel in furtherance of their clients' interests. *See Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1344 (1988), *app. denied,* 519 Pa. 667, 548 A.2d 256 (1988) (*citing Smith v. Griffiths,* 327 Pa.Super. 418, 476 A.2d 22, 24–25 (1984)). At this stage in the proceedings, we find it difficult to discern a basis for applying this privilege to any of the City Defendants' conduct, and therefore do not dismiss the claim on this basis. Swanson Bevivino also argues that the Plaintiffs allege no conduct on its part occurring at any time after the Plaintiffs' opportunities for future business and contractual relationships arose in early 1999 and that it therefore could not have interfered with these relationships. Because this argument is made on page 19 of Swanson Bevivino's Supporting Brief and the City Defendants sought to incorporate only pages 12 through 18, we assume that the City Defendants did not wish to incorporate this argument. We note that even if we are mistaken in this assumption, there are a number of allegations that the City Defendants committed acts after the prospective relationships arose.

and conspiracy to violate section 1983 claims that are based on conduct occurring prior to May 26, 1998 are dismissed as time-barred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir.1993); *Wells v. Rockefeller*, 728 F.2d 209, 217 (3d Cir.1984) *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985). We note again that the conspiracy allegations do not toll the limitations period because it runs from each overt act causing damage, and there are no allegations from which we could infer fraudulent concealment. Therefore, all causes of action against Swanson Bevivino arising from conduct occurring prior to May 26, 1998, such as Bevivino's August 1993 letters, are dismissed. For purposes of this motion, we have leniently construed Plaintiffs' conspiracy allegations against Bevivino to also be against Swanson Bevivino,[12] but find that the Complaint nevertheless fails to set forth the necessary allegations to state a section 1983 claim or conspiracy to violate section 1983 claim. We find that all but one of Bevivino's individual acts, detailed in section C below, are petitioning activities protected by the *Noerr–Pennington* doctrine and hereby incorporate our discussion from this section. We only add here that we find the doctrine applicable regardless of whether these acts are attributable to Bevivino individually or to the law firm. With respect to the one action taken by Bevivino that we find is not protected by the *Noerr–Pennington* doctrine, his alleged attendance and participation in the Mayor's May 3, 1999 and May 5, 1999 meetings, we find no basis for attributing this action to Swanson Bevivino. The Plaintiffs do not allege that Bevivino was acting in the scope of his employment while he was at these meetings, and the context does not suggest as much. The only remaining conduct on the part of

the law firm that could form the basis of Plaintiffs' section 1983 claims, therefore, is Stewart's allegedly deficient representation of the School Board and the firm's representation of the Planning Commission despite Plaintiffs' objections. *See* Complaint ¶¶ 112, 134.

It is well settled that an attorney is not a state actor for purposes of section 1983 by virtue of being licensed by the state and otherwise working in the highly regulated profession. *See Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir.1980); *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 355, 95 S.Ct. 449, 42 L.Ed.2d 477 (U.S. 1974). An attorney may become a state actor, however, by conspiring with a state official to deprive a person of his or her constitutional rights. *See Messa v. Allstate Ins. Co.*, 897 F.Supp. 876, 882 (E.D.Pa.1995); *Kovacs v. Goodman*, 383 F.Supp. 507, 509 (E.D.Pa.1974), *aff'd* 515 F.2d 507 (3d Cir.1975).

To state a section 1983 conspiracy claim, a plaintiff must set forth "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." *Hammond v. Creative Financial Planning Org. Inc.*, 800 F.Supp. 1244, 1249 (E.D.Pa.1992). There must be an agreement of two or more persons to "do a criminal act, or to do an unlawful act by unlawful means or for an unlawful purpose." *Spencer v. Steinman*, 968 F.Supp. 1011, 1020 (E.D.Pa.1997) (*citing Ammlung v. City of Chester*, 494 F.2d 811, 814 (3d Cir.1974)). The Third Circuit has also acknowledged that conclusory allegations of concerted action without facts actually reflecting such action may be insufficient to

---

**12.** Plaintiffs generically allege in Count III that all the defendants "have conspired, combined and agreed to deprive Pellegrino Foods of its constitutionally protected rights."

Complaint ¶ 245. The specific allegations in the Complaint, however, consistently assert that Bevivino conspired with city officials and never mention Swanson Bevivino.

state a conspiracy claim. *See Abbott v. Latshaw,* 164 F.3d 141, 147 (3d Cir.1998), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 794 (1999) (*citing Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998), *cert. denied,* 525 U.S. 930, 119 S.Ct. 337, 142 L.Ed.2d 278 (1998)). We find that the Plaintiffs' allegations against Swanson Bevivino are insufficient to meet this standard.

Plaintiffs' allegation that Stewart represented the School Board deficiently in conspiracy with the City Defendants is not supported by any factual allegations whatsoever. Likewise, the allegation that the firm was biased against the Pellegrinos and therefore should not have represented the Planning Commission is a conclusion without any supporting factual allegations, although we note in particular that the value of this allegation to establishing a conspiracy to violate section 1983 claim is questionable. Similar to *Fries,* nothing in the Plaintiffs' Complaint "demonstrates the existence of any joint action, concerted effort, or even a general understanding" between the law firm and the City Defendants. *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998), *cert. denied,* 525 U.S. 930, 119 S.Ct. 337, 142 L.Ed.2d 278 (1998). The Plaintiffs' Complaint includes "only accusations and conclusory allegations that the defendants conspired" with the City Defendants. *Id.* These allegations are insufficient to establish state action by means of conspiracy, and we therefore dismiss Plaintiffs' section 1983 and conspiracy to violate section 1983 claims against Swanson Bevivino.

2. Failure to Allege Claims for Wrongful Use of Civil Proceedings, Abuse of Process, and Tortious Interference with Prospective Business and Contractual Relationships

We dismiss Plaintiffs' claims against Swanson Bevivino for violations of the Dragonetti Act and abuse of process for the identical reasons we dismissed these claims against the City Defendants, and hereby incorporate our discussion of the law on this point from section A.8 above.

 We also dismiss Plaintiffs' claim against Swanson Bevivino for tortious interference with prospective business or contractual relations. Liberally construing the Complaint and assuming that all of Bevivinos' actions are attributable to Swanson Bevivino, there are four instances of conduct involving the firm. These are: 1) Bevivino's August, 1993 letters on firm letterhead to the Zoning Hearing Board regarding the special exception and building permit; 2) Stewart's 1998 representation of the school board in the sale of the school property; 3) Bevivino's July 16, 1998 letter to City Manager DuPont regarding the Lookout Street parking spaces; and 4) Swanson Bevivino's 1998 representation of the Planning Commission in its opposition to the Pellegrinos' application for subdivision approval. To state a tortious interference with prospective business or contractual relationships claim, a plaintiff must allege, among other elements, the existence of a prospective relationship and an intent or purpose on part of the defendant to prevent this prospective relationship from materializing. *See Allstate Transportation Co., Inc. v. Southeastern Pennsylvania Transp. Auth.,* No. 971482, 1997 WL 666178, *10 (E.D.Pa. Oct.20, 1997). In this case, the prospective relationships allegedly developed when the Plaintiffs received offers to produce food products in early 1999, and from the facts alleged, Swanson Bevivino's involvement in the case in any capacity terminated in 1998. *See* Complaint ¶ 142. An intent to interfere with the Plaintiffs' prospective relationships is therefore impossible as these relationships did not exist at any time that Swanson Bevivino was involved. Thus, Plaintiffs' claim for tor-

tious interference with prospective business or contractual relations against Swanson Bevivino is dismissed.

## C. The Neighbor Defendants

 Plaintiffs' claims include allegations that the Neighbor Defendants violated section 1983, conspired to violate section 1983, tortiously interfered with their prospective business and contractual relationships and engaged in abuse of process. We find that all of the Neighbor Defendants' conduct with one exception is protected by the doctrine set forth in *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) (the *"Noerr–Pennington* doctrine"). This doctrine protects concerted efforts to influence public officials regardless of the underlying motive. *See Pennington*, 381 U.S. at 670, 85 S.Ct. 1585. For the reasons discussed below, we therefore dismiss from the case Rita Bevivino, Glenn M. Belleau, Mary Belleau, Dorothy L. Fleming, Peter H. Smith and Margery R. Smith. We do not dismiss William A. Bevivino because we find that his alleged participation in the Mayor's May 3, 1999 and May 5, 1999 meetings is not petitioning activity protected by the doctrine.

The instances of conduct upon which the Plaintiffs' claims against the Neighbor Defendants are based include the following: 1) that William Bevivino attended a Zoning Board hearing on August 5, 1993 on behalf of himself, his wife, and Swanson Bevivino and said that the noise emanating from the Plant was unacceptable; 2) that William Bevivino trespassed onto the property in order to take pictures for the purpose of fabricating an argument against Pellegrino Foods' proposed construction of a freezer; 3) that William Bevivino sent a letter on firm letterhead to the Zoning Board opposing the expansion on August 10, 1993;

4) that William Bevivino sent a letter on firm letterhead to Dale Jones of the City's building permit office arguing that Pellegrino Foods had not met the requirements for a building permit on August 31, 1993; 5) that William Bevivino wrote a letter to Zoning Officer Worley regarding the Lookout Street parking spaces that resulted in an order from Worley directing the Pellegrinos to stop using the spaces on July 16, 1998; 6) that Glenn Belleau complained to police of noise emanating from the Plant property on behalf of himself and his wife on April 2, 1999 and again on May 5, 1999 in conspiracy with the City; 7) that William A. Bevivino attended the Mayor's May 3, 1999 and May 5, 1999 meetings and provided a list of people who would be willing to complain about Pellegrino Foods and; a 8) that all the Neighbor Defendants attended and/or were represented at the May 20, 1999 Zoning Board hearing. *See* Complaint, ¶¶ 57–59, 65, 71, 117–120, 150–151, 162–63 and 165. Although we dismiss the Neighbor Defendants on the basis of the *Noerr–Pennington* doctrine, we also note that the Plaintiffs' claims based on activities occurring prior to May 26, 1998 are time-barred.

The *Noerr–Pennington* doctrine originally shielded from Sherman Act liability "concerted effort[s] to influence public officials regardless of [the influencing party's or parties'] intent or purpose." *Mine Workers v. Pennington*, 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). The Supreme Court based this protection on two principles: 1) the First Amendment right of citizens to petition the government and participate in the government process; and 2) a statutory construction of the Sherman Act finding a Congressional intent to exclude the political process. *See We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326 (3d Cir.1999) (*citing Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38, 81

S.Ct. 523, 5 L.Ed.2d 464 (1961). The Third Circuit and others have extended the doctrine by analogy to petitioning activity outside the antitrust context, finding the first principle equally applicable in other contexts. *See We, Inc.* at 326–27; *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3d Cir. 1988). Concisely, the rule in the Third Circuit is that "liability cannot be imposed for inducing legislative, administrative, or judicial action." *Wells,* 839 F.2d 155 at 160.

 This rule precludes imposing liability on all of the Neighbor Defendants except William A. Bevivino. Bevivino's letters to City Officials, his participation in the Zoning Board hearings, and the Neighbor Defendants' collective participation in the Zoning Board hearings are paradigmatic examples of petitioning activity. Bevivino's picture-taking was ostensibly for the purpose of presenting evidence to the Zoning Board, and therefore is also conduct protected by the doctrine. *See King v. Township of East Lampeter,* 17 F.Supp.2d 394, 413 (E.D.Pa.1998). We find, however, that William A. Bevivino's alleged participation in the Mayor's May 3, 1999 and May 5, 1999 meetings where he assertedly provided a list of people willing to complain about Pellegrino Foods is not petitioning activity. This conduct is simply not, in our opinion, "petitioning" activity protected by the doctrine.

We do not decide whether Belleau's complaints to the police constitute "petitioning activity," but nonetheless hold that the activity is protected and cannot be the basis for suit. We find the action of contacting the police to be similar to the conduct in *Wells,* a case in which the Third Circuit applied the *Noerr–Pennington* to "action designed to bring a facility's non-compliance with applicable regulations to the attention of the appropriate authorities and to stimulate public interest in the mat-

ter." *Wells,* 839 F.2d 155 at 159. The court further noted that the conduct on which the suit was based was protected by the "firmly rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all." *Id.* at 160. We also agree with the Fourth and Ninth Circuits that the public policies served by ensuring the free flow of information to the police are equally as strong as those served by the Noerr–Pennington doctrine, even if the doctrine itself does not cover this activity. *See Ottensmeyer v. Chesapeake & Potomac Telephone Co. of Maryland,* 756 F.2d 986, 993 (4th Cir.1985) (*citing Forro Precision, Inc. v. International Business Machines Corp.,* 673 F.2d 1045, 1060 (9th Cir.1982), *cert. denied,* 471 U.S. 1130, 105 S.Ct. 2664, 86 L.Ed.2d 280 (1985)).

Plaintiffs argue that judgment on the pleadings is not proper because the Noerr–Pennington doctrine is a defense to liability rather than an immunity to suit, and because the "sham" exception to the doctrine is applicable. We disagree.

Whether the doctrine operates as a defense to liability or an immunity to suit has no bearing on whether the Neighbor Defendants are entitled to judgment as a matter of law. The distinction was discussed by the Third Circuit in *We, Inc.* in the context of the final order doctrine. In this case, the court held that the *denial of* a summary judgment motion based on Noerr–Pennington was not a collateral order subject to immediate review because the doctrine operated as a defense rather than an immunity. *See We, Inc.,* 174 F.3d at 328. This distinction is entirely academic in this context.

We also find that the "sham" exception does not apply. This exception "encompasses situations in which persons use the governmental process—as opposed to the outcome of that process—as an anticom-

petitive weapon. A classic example is the filing of frivolous objections to the license application of a competitor, with no expectation of achieving denial of the license but simply in order to impose expense and delay." *City of Columbia v. Omni Outdoor Advertising,* 499 U.S. 365, 380, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991). The Supreme Court has indicated that the sham exception applies in the antitrust as well as other contexts. *See Professional Real Estate Investors v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 59, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) ("Whether applying Noerr as an antitrust doctrine or invoking it in other contexts, we have repeatedly reaffirmed that evidence of anticompetitive intent or purpose alone cannot transform otherwise legitimate activity into a sham.").

In order for petitioning activity to fall within the sham exception, a two-part test must be satisfied. First, the activity must be objectively baseless, in that no reasonable person could realistically expect success on the merits. *See id.* at 60, 113 S.Ct. 1920. If an objective person could conclude that the action is reasonably calculated to elicit a favorable response, the *Noerr–Pennington* doctrine applies and the second part of the test is not reached. If the activity is determined to be objectively baseless, then the court must examine the subjective motivation of the petitioning party. *See id.* If the court determines that the activity conceals an attempt to directly interfere with the business relationships of the competitor, the doctrine does not apply and the petitioning parties are subject to liability.

We conclude from the pleadings before us that an objective person could realistically expect success from all of the Neighbor Defendants' petitioning activities, and therefore find that these activities were not objectively baseless. Because we so find, we need not reach the second prong of the test. The Neighbor Defendants' motion is therefore granted in part and denied only to the extent that the Plaintiffs' claims against William A. Bevivino are based on his participation in the Mayor's meetings.

### ORDER

AND NOW, this —— day of December, 2000, for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED THAT the City Defendants' Motion to Dismiss [Doc. No. 18] is GRANTED IN PART AND DENIED IN PART, that Swanson, Bevivino, Gilford and Stewart, P.C.'s Motion to Dismiss [Doc. No. 21] is GRANTED, and that the Neighbor Defendants' Motion for Judgment on the Pleadings [Doc. No. 32] is GRANTED IN PART and DENIED IN PART.